Revised July 23, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30046

_____


DAVID BATISTE; PAUL BATISTE; MICHAEL BATISTE,

              Plaintiffs-Appellants-Cross-Appellees,

v.

ISLAND RECORDS INC; ISLAND RECORDS LTD; MCA MUSIC
PUBLISHING, A Division of MCA, Inc; ATTRELL CORDES,
also known as P M Dawn, doing business as P M Dawn;
WADE FEATHERSTONE, Individually; GEE STREET RECORDS
INC,

              Defendants-Appellees-Cross-Appellants

and

ISAAC BOLDEN,

              Defendant-Appellee.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
_____
June 21, 1999

Before KING, Chief Judge, and REAVLEY and BENAVIDES, Circuit
Judges.

KING, Chief Judge:

     Attrell Cordes, a successful singer and songwriter who

performs with his brother under the name "P.M. Dawn," used a

digital sample of a musical composition that was originally

written and recorded by David, Paul, and Michael Batiste.  Cordes

included the digital sample in a song on a highly successful album that was released by Island Records, Inc. and Gee Street Records, Inc., and the Batistes seek damages and injunctive relief for alleged copyright infringement and violations of the Lanham Act, 15 U.S.C. § 1125, the Louisiana Unfair Trade Practices Law, LA. REV. STAT. ANN. §§ 51:1401-1419, and Louisiana state laws regarding conversion and misappropriation. The district court dismissed the Batistes' claims against Wade Featherstone for lack of personal jurisdiction and granted all defendants except Isaac Bolden summary judgment on all claims, except Paul and Michael Batiste's allegations of conversion and misappropriation, which the court allowed Paul and Michael Batiste to voluntarily dismiss without prejudice. We affirm the judgment of the district court in all respects except that we determine the district court abused its discretion by allowing Paul and Michael Batiste to dismiss their surviving claims without prejudice, and we remand with instructions to enter judgment in favor of all defendants except Bolden on these claims as well.

## I. FACTUAL BACKGROUND

David, Paul and Michael Batiste (collectively, the Batistes) are three brothers who, while performing together as a group known as "David Batiste & the Gladiators," wrote a musical composition called "Funky Soul" in 1968. The Batistes performed "Funky Soul" in New Orleans and recorded the song in 1970 with

2

the assistance of Isaac Bolden, a local music publisher and record producer.

David Batiste, the eldest brother and leader and manager of the group, entered into two written contracts with Bolden: (1) a Songwriter's Contract governing rights to the "Funky Soul" musical composition, and (2) an Artist Contract governing rights to the "Funky Soul" physical master tape and sound recording. Under the Songwriter's Contract, David Batiste warranted that the "Funky Soul" musical composition was his "sole, exclusive and original work" and transferred that composition, including the title, words, music, and the exclusive right to secure copyright, to Bolden. Under the Artist Contract, David Batiste transferred to Bolden all rights to the physical master tape and the sound recording of "Funky Soul" embodied thereon, including the "exclusive, unlimited and perpetual right . . . to manufacture, advertise, sell, lease, license or otherwise use or dispose of, in any or all fields of use, by any method now or hereafter known, throughout the world, records embodying the performances."

Shortly after the recording session for "Funky Soul," Bolden obtained a certificate of copyright registration for the musical composition identifying David Batiste as its sole writer. Bolden authorized the manufacture and release of two records containing "Funky Soul" in 1970, but neither record was a commercial success.

Attrell Cordes and his brother perform together in the highly successful musical group "P.M. Dawn." In 1992, Cordes purchased a copy of the "Funky Soul" record and decided to sample it for use in a song of his own entitled "So On and So On" ("So On"). Cordes recorded a six and one-half second portion of "Funky Soul" from the record he purchased and used digital technology to modify the recording. Cordes used this digital sample in his song "So On" that was included on "the Bliss Album," which Island Records, Inc.[1] and its affiliate, Gee Street Records, Inc. (Gee Street), released on March 15, 1993.

Prior to "the Bliss Album" release, Gee Street determined that Bolden held all rights to the "Funky Soul" musical composition and sound recording and entered into three contracts with him: (1) a Master Recording Sampling License, on January 26, 1993; (2) a Mechanical License Agreement, on March 3, 1993; and (3) an Administration Agreement, on April 27, 1993. Under the Master Recording Sampling License, Bolden granted Gee Street "the non-exclusive right to manufacture [r]ecords embodying that certain Master Recording, entitled 'So On & So On' . . . [which] contains an interpolation of [Bolden's] master recording, entitled 'Funky Soul.'" Under the Mechanical License Agreement,

---

[1] At the time of the events leading to this lawsuit, Island Records, Inc. and Island Records, Ltd. were both subsidiaries of Polygram N.V. For the purposes of this opinion, we will refer to Island Records, Inc., Island Records, Ltd., or both, as Island Records.

4

Bolden consented to Gee Street's release of "So On," which "interpolates a portion of the musical composition entitled 'Funky Soul.'" Finally, under the Administration Agreement, Bolden and MCA Music Publishing (MCA) agreed that Bolden owns a forty percent share of "So On," and that Bolden "grants licenses and assigns to [MCA] exclusively the copyright and all other rights . . . in and to ['So On']." In exchange for his allowing the use of the "Funky Soul" sample, Gee Street paid Bolden a $15,000 advance against record royalties in February 1993.

The liner notes accompanying "the Bliss Album" credit "D. Batiste" as a co-writer of "So On" and state that "'Funky Soul' performed by David Batiste & The Gladiators [is] used under license by Isaac Bolden." The Batistes admit that they learned that a portion of "Funky Soul" was used in "So On" no later than July 1993, and that they prepared and submitted an application to register as co-writers of "So On" with Broadcast Music, Inc., a well-known performing rights society.

## II. PROCEDURAL HISTORY

The Batistes filed this suit in the United States District Court for the Eastern District of Louisiana on March 10, 1995, alleging that Island Records, Gee Street, MCA, Cordes, Bolden, and Wade Featherstone violated federal copyright laws, 17 U.S.C. §§ 101-603; the Lanham Act, 15 U.S.C. § 1125; the Louisiana Unfair Trade Practices Law, LA. REV. STAT. ANN. §§ 51:1401-1419 (LUTPL), and Louisiana state laws regarding conversion and

5

misappropriation.  In addition, the Batistes allege in their complaint that Bolden breached his fiduciary duty and contractual obligation by failing to account for income that he has received from the sale or distribution of records containing "Funky Soul" and by participating in the misappropriation of the Batistes' property and infringement of their copyrights.  The Batistes seek injunctive and declaratory relief, an accounting of all amounts received from transactions relating to "the Bliss Album" and "Funky Soul," and damages.

Wade Featherstone filed a motion on October 15, 1996 to dismiss the Batistes' claims for lack of personal jurisdiction and failure to state a claim upon which relief may be granted. Featherstone asserted that he is a citizen and resident of England and lacked sufficient jurisdictional contacts with the state of Louisiana.  Island Records, MCA, Gee Street, and Cordes (collectively, defendants) filed a motion on December 6, 1996 to dismiss the Batistes' claims of copyright infringement for lack of subject matter jurisdiction, arguing that the Batistes could not demonstrate that they had obtained or applied to obtain a valid copyright registration for "Funky Soul."[2]  Defendants also

---

[2] Although the district court's order on September 8, 1997 states that defendants' motion to dismiss for lack of subject matter jurisdiction is "granted," the accompanying opinion offers no support for this conclusion.  In fact, the opinion states that the Batistes have standing to bring a copyright infringement claim as beneficial owners of Bolden's copyright, and the district court ultimately granted defendants summary judgment on the copyright claims.  Defendants note this inconsistency and

filed a motion for summary judgment on all claims, and the Batistes filed a motion seeking summary judgment in their favor on their copyright, Lanham Act, and misappropriation claims against defendants and Bolden.

The district court granted defendants summary judgment on all of David Batiste's claims, and on all of Paul and Michael Batiste's claims except conversion and misappropriation.[3] The

argue on appeal that if the district court did deny their motion to dismiss for lack of subject matter jurisdiction, it did so in error.

We find no merit in defendants' argument. Initially, we note that the district court subsequently amended its September 8 order to explicitly state that it had granted summary judgment on all of David Batiste's claims, and on all of Paul and Michael Batiste's claims except their state-law claims for conversion and misappropriation, and that the court entered partial judgment on the copyright claims under Federal Rule of Civil Procedure 54(b). These actions demonstrate that the district court did deny defendants' motion to dismiss, and we agree with its determination that the Batistes may properly assert their copyright infringement claims as beneficial owners of Bolden's registered copyright. See 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."); Cortner v. Israel, 732 F.2d 267, 271 (2d Cir. 1984) ("When a composer assigns copyright title to a publisher in exchange for the payment of royalties, an equitable trust relationship is established between the two parties which gives the composer standing to sue for infringement of that copyright.").

[3] The district court appears to have included Bolden in its disposition of the motions for summary judgment and dismissal. We have carefully reviewed the record, however, and we find no indication that Bolden either joined defendants' motion for summary judgment or made such a motion on his own behalf. We therefore necessarily construe the district court's order as granting summary judgment only on those claims made against the moving defendants, leaving the Batistes' claims against Bolden unaffected.

7

court found that the Songwriter's Contract effectively transferred any interest David Batiste had in "Funky Soul" to Bolden, that Bolden had authorized defendants to use the composition, and that therefore the Batistes had failed to raise a genuine issue of material fact on their copyright infringement claims. The district court also determined that the Batistes failed to raise an issue of material fact that defendants had violated the Lanham Act because "Funky Soul" was attributed to "David Batiste & The Gladiators" in the liner notes accompanying the album, and that defendants' actions were not unfair or deceptive under the LUTPL because David Batiste transferred any interest he had in the "Funky Soul" composition to Bolden in exchange for royalties and the Batistes failed to produce any evidence indicating that defendants knew or should have known of any interest in "Funky Soul" held by Paul and Michael Batiste. Finally, the district court granted summary judgment on David Batiste's conversion and misappropriation claims because he had transferred any ownership rights he held to Bolden in 1970, but the court refused to grant summary judgment on similar claims raised by Paul and Michael Batiste because they "need only establish that the defendants are in possession of property which belongs to them." In subsequent orders, the district court dismissed the Batistes' claims against Featherstone as lacking

8

personal jurisdiction and dismissed their remaining state-law claims under 28 U.S.C. § 1367(c).[4]  The Batistes timely appeal.

### III. DISCUSSION

The Batistes argue on appeal that the district court erroneously granted defendants summary judgment on their copyright infringement, Lanham Act, LUTPL, and conversion and misappropriation claims, and that Featherstone had sufficient minimum contacts with the state of Louisiana for the court to exercise personal jurisdiction.[5]  Defendants cross-appeal, arguing that the district court abused its discretion by dismissing without prejudice the Batistes' surviving state-law claims.[6]  We address these arguments in turn.

### A. Copyright Infringement

---

[4] Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim . . . if--
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

[5] The Batistes failed to provide any argument in either their briefs or at oral argument supporting their appeal of the district court's order dismissing Featherstone for lack of personal jurisdiction, and we consider this claim abandoned.  See Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994).

[6] Bolden does not appeal, and we do not consider, the district court's dismissal without prejudice of the Batistes' claims against him under 28 U.S.C. § 1367(c).

9

The Batistes argue that the district court erred in granting summary judgment on their copyright infringement claims because defendants' use of "Funky Soul" infringed the "Funky Soul" copyright and was not authorized by the 1970 Songwriter's and Artist Contracts or the three contracts that Bolden entered into in 1993.  The Batistes contend that the Songwriter's and Artist Contracts between David Batiste and Bolden are invalid because David Batiste does not remember signing them and the contracts are "suspect enough to raise a factual issue."  Furthermore, the Batistes argue that these contracts did not anticipate or authorize the digital sampling method at issue, and that the contracts cannot apply to Paul and Michael Batiste because they were minors at the time and did not authorize David Batiste to negotiate on their behalf.

The Batistes allege that even if the 1970 contracts did allow Bolden to license the use of a digital sample of "Funky Soul" to defendants, the contracts that Bolden executed in 1993 do not authorize defendants' use.  Specifically, the Batistes claim that either (1) "So On" is a "derivative work," and the 1993 contracts serve only to authorize and share profits from the new material Cordes added to the song, not the pre-existing work; or (2) the contracts between Bolden and Gee Street/MCA purport to render "So On" a "joint work," a characterization that would effectively merge Cordes's contribution with Bolden's rights in "Funky Soul," and that such a characterization under the "Twelfth

10

Street Rag" doctrine[7] makes the contracts invalid because they attempt to achieve a result prohibited by copyright law.[8]

"We review a grant of summary judgment de novo, applying the same criteria used by the district court in the first instance." Texas Manufactured Housing Ass'n v. City of Nederland, 101 F.3d 1095, 1099 (5th Cir. 1996); see Tolson v. Avondale Indus., Inc., 141 F.3d 604, 608 (5th Cir. 1998). Summary judgment is proper

---

[7] The "Twelfth Street Rag" doctrine derives from the Second Circuit's decision in Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 221 F.2d 569, modified on reh'g, 223 F.2d 252 (2d Cir. 1955), allowing the assignee of an ownership interest in a musical composition to add new elements to a pre-existing work and thereby create new ownership interests in the resulting "joint work," extinguishing any other ownership interests in the pre-existing work. Congress overruled this doctrine in 1976 by adopting the current definition for "joint work," which requires that each author intend the merger at the time the author prepares his or her contribution. See 17 U.S.C. § 101 (defining "joint work" as a "work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole").

[8] The Batistes make two other arguments respecting the validity of the 1993 contracts of which we easily dispose. The Batistes claim that (1) the alleged infringements occurred before any licenses were issued by Bolden, and defendants cannot demonstrate that the agreements preceded the release of "the Bliss Album," and (2) defendants attempted to assign the benefits of the contracts to each other without obtaining Bolden's prior written consent. We note initially that the summary judgment evidence shows that the Master Recording Sampling License and Mechanical License Agreement had already been executed at the time of release and that the remaining, unexecuted contract does not purport to authorize the use of "Funky Soul." In addition, to the extent that any writing requirement in the contracts applies to assignments among defendants, the summary judgment evidence demonstrates that Bolden waived such a requirement and implicitly consented to defendants' use. See Lulirama Ltd. v. Axcess Broadcast Servs., Inc., 128 F.3d 872, 879 (5th Cir. 1997) (stating that, under federal copyright law, a nonexclusive license may be granted orally or implied from conduct).

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The party moving for summary judgment bears the initial burden of showing an absence of evidence to support the nonmoving party's case, see id. at 322-27, but, once this burden has been met, the nonmoving party can resist the motion by making a positive showing that a genuine issue of material fact exists, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. See Celotex, 477 U.S. at 324-25. Finally, we note that a grant of summary judgment may be affirmed on any ground that was raised to the district court and upon which both parties had the opportunity to present evidence. See Conkling v. Turner, 18 F.3d 1285, 1296 n.9 (5th Cir. 1994).

The only question that we face regarding the Batistes' copyright claims is whether the Batistes have successfully demonstrated a genuine issue of material fact that the multiple contracts among the parties are insufficient to authorize defendants' use of a digital sample of "Funky Soul" in their song "So On." After carefully examining the contracts between David Batiste and Bolden and the contracts between Bolden and Gee

12

Street/MCA, we agree with the district court's conclusion that there is no such issue of material fact and that defendants are entitled to summary judgment on these claims.

The Batistes point to no evidence supporting their allegation that the 1970 contracts are invalid or otherwise "suspect," and David Batiste's inability to remember signing them is not sufficient to raise a material issue as to the validity of the agreements. See Lone Star Indus., Inc. v. Nelstad Material Corp., 811 F. Supp. 147, 149 (S.D.N.Y. 1993). David Batiste granted Bolden the entire musical composition, including the exclusive right to secure copyright, "all rights of whatsoever nature" relating to the copyright, and the right to license, "in any or all fields of use, by any method now or hereafter known, throughout the world, records embodying the performances." Such a grant is sufficiently broad to include the licensing of a record containing a digital sample of "Funky Soul." Cf. Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 485-88 (2d Cir. 1998) (concluding that 1939 agreement conveying the right "to record [a composition] in any manner, medium or form" for use "in [a] motion picture" is sufficiently broad to include distribution of the motion picture in laser disc format); Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 885 (9th Cir. 1996) (stating that right to synchronize music in any future technologies, including videocassettes, is included in clause granting party all the music rights of a motion picture).

13

Finally, we note that the validity of Paul and Michael Batiste's allegations that David Batiste did not have authority to enter the 1970 contracts on their behalf is immaterial to their claims of copyright infringement against any party's use that was authorized by their brother.  See Quintanilla v. Texas Television Inc., 139 F.3d 494, 498 (5th Cir. 1998) ("'A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright.'") (quoting Oddo v. Ries, 743 F.2d 630, 632-33 (9th Cir. 1984)); Cortner v. Israel, 732 F.2d 267, 271 (2d Cir. 1984) ("It is elementary that the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him; nor can a joint owner of a copyright sue his co-owner for infringement."); MELVIN B. NIMMER & DAVID NIMMER, 1 NIMMER ON COPYRIGHT § 6.10 (1999) [hereinafter NIMMER] ("[A]n authorization to the defendant from one joint owner will be an effective defense to an infringement action brought by another joint owner.").

We also find no merit in the Batistes' arguments that the 1993 contracts between Bolden and Gee Street/MCA are invalid because they purport to create a "joint work."  The contracts recognize that Bolden, as the owner of the "Funky Soul" copyright, retains his copyright therein.  See Gilliam v. American Broadcasting Cos., 538 F.2d 14, 22 (2d Cir. 1976) (stating that provision in license retaining rights in pre-existing script "suggest[s] that the parties did not consider themselves joint authors of a single work").  Although the

14

Administration Agreement does provide that Bolden and MCA jointly own "So On" as an authorized, derivative work, joint ownership of a derivative work does not alone create a "joint work." The policies underlying the "Twelfth Street Rag" doctrine thus do not apply, and we see no conflict between the 1993 contracts and Congress's abrogation of that doctrine. Furthermore, it is clear from the face of the 1993 contracts that they form a license to use "Funky Soul" and do not merely authorize and share profits from Cordes's additional material. We therefore conclude that the district court was correct in its determination that no genuine issue of material fact exists regarding defendants' authorized use of "Funky Soul" and properly entered summary judgment on the copyright infringement claims in their favor.

## B. Lanham Act

The Batistes argue that the district court erroneously granted summary judgment on their claims that defendants "mutilate[d]" "Funky Soul" and that this "abuse" of their work amounts to "reverse passing off" in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[9] Relying on the Second

---

[9] Under § 43(a),

Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods,

15

Circuit's decision in Gilliam, the Batistes claim that an author has a "legal and moral right to have his work attributed to him in the form in which he wrote it," and that defendants' licenses "would not have permitted defendants to mutilate plaintiffs' works."  Finally, the Batistes argue that defendants failed to properly credit their contribution to "So On" because Michael and Paul Batiste's "authorship contributions" were not mentioned and that the "Funky Soul Track" constitutes the entire instrumental track in "So On."

In Gilliam, the Second Circuit considered a claim by a group of authors and performers known as "Monty Python" seeking a preliminary injunction to prevent the American Broadcasting Company (ABC) from broadcasting edited versions of three of their programs.  See 538 F.2d at 17.  The Second Circuit enjoined the broadcasts, concluding that the group had shown a likelihood of succeeding on the merits of their claims that the editing exceeded the scope of ABC's license.  See id. at 22-23.  The court further determined that the group would likely succeed on its claim under the Lanham Act that, "regardless of the right ABC had to broadcast an edited program, the cuts made constituted an actionable mutilation of Monty Python's work," and that such a

services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

16

cause of action "finds its roots in the continental concept of droit moral, or moral right, which may generally be summarized as including the right of the artist to have his work attributed to him in the form in which he created it." Id. at 23-24; see 3 NIMMER at § 8D.04[A][2].

Even if we were to adopt the reasoning of the Second Circuit and determine that the "manipulation" that "Funky Soul" suffered is sufficient to state a cause of action under the Lanham Act, we still must conclude that summary judgment in favor of defendants was proper because the Batistes have failed to demonstrate the existence of a genuine issue of likelihood of confusion. See 15 U.S.C. § 1125(a)(1)(A) (prohibiting misleading representations of fact which are likely to cause confusion, mistake, or deception); 3 NIMMER at § 8D.04[A][2] (stating that, for a plaintiff to prevail on such a manipulation claim, "it must invoke the appropriate elements for relief under the Lanham Act, rather than simply serving as a back-door method for reviving failed copyright claims") (footnote omitted). The Batistes point to no evidence in the record demonstrating that consumers were confused or deceived by either the use of a digital sample of "Funky Soul" in "So On" or the attribution to "David Batiste & The Gladiators" as a co-author of "So On." The Batistes' claim that Paul and Michael Batiste were improperly excluded from the liner notes accompanying the album also fails to suggest that consumers were confused, especially because the liner notes do credit the name

17

of the band in which both Paul and Michael Batiste performed. Finding no evidence of a genuine issue of consumer confusion, we affirm the district court's grant of summary judgment in favor of defendants on the Batistes' Lanham Act claims.

## C. State-Law Claims

The Batistes argue that the district court erred in granting defendants summary judgment on their claims of unfair trade practices under the LUTPL, conversion, and misappropriation. The Batistes again contend that the district court improperly determined that the Songwriter's and Artist Contracts that David Batiste entered into in 1970 are valid and authorize defendants' use of "Funky Soul."

The Batistes' claims of unfair trade practices, conversion and misappropriation are delictual under Louisiana law and are therefore subject to a one-year prescriptive period. See LA. REV. STAT. ANN. § 51:1409(E) (stating that a private action under the LUTPL "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action"); LA. CIV. CODE ANN. § 3492 ("Delictual actions are subject to a liberative prescription of one year."); Johnson v. Concordia Bank & Trust Co., 671 So. 2d 1093, 1098 (La. Ct. App. 1996) ("Since conversion is a tort, the prescriptive period for delictual actions applies to plaintiff's action."); Adams v. First Nat'l Bank of Commerce, 644 So. 2d 219, 222-23 (La. Ct. App. 1994) (determining that prescriptive period of one year

18

applies to cause of action for unfair trade practices); National Union Fire Ins. Co. v. Spillars, 552 So. 2d 627, 630 (La. Ct. App. 1989) (finding a suit based on misappropriation or wrongful taking "is therefore a delictual action and subject to liberative prescription of one year").  As a general rule, the prescriptive period begins to run when the plaintiff has actual or constructive knowledge of the alleged tortious act.  See Mistich v. Cordis Mfg. Co., 607 So. 2d 955, 956 (La. Ct. App. 1992).

"[T]he Bliss Album" containing the digital sample of "Funky Soul" was released in March 1993, and the Batistes admit that by July 1993 they knew that defendants had used "Funky Soul" without their permission.  Nonetheless, the Batistes did not file this suit until March 1995.  In their reply brief, the Batistes argue that this court held in Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773 (5th Cir. 1997), that an action to recover for misappropriation of masters and sound recordings is not subject to liberative prescription, and that "this case involves a direct dispute over ownership of the master rights."  The Batistes further contend that their remaining state law claims are saved from prescription by the doctrine of equitable tolling--specifically, they claim that defendants' "absolute refusal to provide information" after the Batistes contacted Bolden and defendants in mid-1993 acted to toll the prescriptive period and makes their present claims timely.

19

The Batistes' arguments misconstrue both our decision in Songbyrd and the equitable tolling doctrine, and neither of these contentions saves their state-law claims from the applicable one-year prescriptive period. Initially, we note that our determination that the plaintiff's cause of action in Songbyrd was not subject to the one-year prescriptive period relied on our conclusion that the plaintiff's claim, which sought recognition of its ownership interest in physical master recordings and the return of those recordings, was a "revindicatory action" seeking the return of property rather than a "personal action." See Songbyrd, 104 F.3d at 777. The Batistes, however, do not assert, and there is no evidence suggesting, that defendants ever possessed the physical master recording or any other physical property belonging to the Batistes. Rather, the Batistes argue that the "Funky Soul" sound recording was misappropriated because defendants used it in "So On," and they seek damages for this use. The Batistes' claims are therefore properly considered "personal actions" and are subject to the one-year prescriptive period. See id. at 777-79. Finally, we decline the Batistes' invitation to invoke the equitable tolling doctrine because the Batistes admit that they knew the facts underlying their cause of action and sought legal advice on how to pursue their claims more than one year prior to filing suit against defendants. Cf. Kavanaugh v. Long, 698 So. 2d 730, 738 (La. Ct. App. 1997) (stating that equitable tolling suspends prescriptive period for

20

medical malpractice claim, "but only until the patient knew or should have known of the malpractice or concealment from other sources"). We therefore affirm the district court's grant of summary judgment in favor of defendants on the Batistes' claims of unfair trade practices, and on David Batiste's claims of misappropriation and conversion.

## D. Pendent Jurisdiction

Following the district court's entry of summary judgment on all the Batistes' claims against defendants except Paul and Michael Batiste's claims of conversion and misappropriation, the court declined to retain supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367 and granted the Batistes' motion to voluntarily dismiss these claims without prejudice. Defendants appeal the district court's decision to dismiss these claims without prejudice and urge us to render judgment on these claims as well, arguing that they are also time-barred because they were filed more than one year after Paul and Michael Batiste admit they knew the facts underlying their causes of action. Defendants contend that the district court abused its discretion by allowing the Batistes' voluntary dismissal just one month before trial and after defendants had spent three years and more than one million dollars fighting this litigation, and defendants further note that the parties had engaged in extensive discovery including numerous depositions, provided the district court with

21

hundreds of pages of briefing and several hours of oral argument, and had "extensively addressed" these remaining claims.

We review a district court's decision to decline jurisdiction over pendent state-law claims for an abuse of discretion. See Robertson v. Neuromedical Ctr., 161 F.3d 292, 296 (5th Cir. 1998); McClelland v. Gronwaldt, 155 F.3d 507, 519 (5th Cir. 1998). "Our review is guided by the relevant statutory provisions governing the exercise of supplemental jurisdiction, see 28 U.S.C. § 1367(c), as well as the Supreme Court's articulation of the scope and nature of district courts' discretion in exercising jurisdiction over pendent state law claims." McClelland, 155 F.3d at 519. We must therefore consider both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350-51 (1988), and United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), in determining whether the district court abused its discretion in allowing the Batistes' voluntary dismissal of their remaining state-law claims.

Although we have stated that our "general rule" is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute. McClelland, 155 F.3d at 519 (citing Wong v. Stripling,

22

881 F.2d 200, 204 (5th Cir. 1989)); see Cohill, 484 U.S. at 350 n.7 (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").  Thus, while the district court's dismissal of the Batistes' federal claims "provides 'a powerful reason to choose not to continue to exercise jurisdiction,' no single factor is dispositive in this analysis."  McClelland, 155 F.3d at 519 (quoting Cohill, 484 U.S. at 351); see Newport Ltd. v. Sears, Roebuck & Co., 941 F.2d 302, 307 (5th Cir. 1991).  We therefore must review the district court's decision "in light of the specific circumstances of the case at bar."  McClelland, 155 F.3d at 519; see Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992).

We begin our analysis of the factors relevant to the pendent jurisdiction inquiry by noting that the remaining claims do not involve any "novel or complex" issues of state law.  Newport Ltd., 941 F.2d at 308 (stating that district court abused its discretion in allowing plaintiff to voluntarily dismiss state-law claims because, inter alia, the remaining issues "present no novel or especially unusual questions which cannot be readily and routinely resolved by the court a quo"); cf. McClelland, 155 F.3d at 519-20 ("[O]ur section 1367(c) analysis results in the conclusion that remand is appropriate" based, in part, on the

23

presence of "at least one 'novel or complex' issue of state law."); Parker & Parsley Petroleum, 972 F.2d at 589 (stating that principles of federalism and comity "point strongly toward dismissal" because "[a]ll of the remaining legal issues of the case, of course, are of state law . . . [and] are difficult ones"). The district court here had already granted defendants summary judgment on some state-law claims, and, as we set forth above, all state-law claims are prescribed. The absence of any difficult state-law questions thus weighs heavily toward our conclusion that the district court abused its discretion in refusing to retain jurisdiction over the remaining claims.

We also conclude that the factors of judicial economy, convenience, and fairness to the parties strongly point toward our conclusion that the district court erred by not retaining jurisdiction here. The case had been pending in the district court for almost three years when the court allowed the Batistes' voluntary dismissal, and the trial was scheduled to begin one month later. See Newport Ltd., 941 F.2d at 307-08 ("[A]fter four years of litigation produced 23 volumes and thousands of pages of record, the preparation of a pretrial order exceeding 200 pages, over a hundred depositions, and according to counsel nearly two hundred thousand pages of discovery production, the declining to hear this case on the eve of trial constituted an abuse of the trial court's discretion."); cf. Cohill, 484 U.S. at 351 ("When the single federal-law claim in the action was eliminated at an

24

early stage of the litigation, the District Court had a powerful reason to choose not to exercise jurisdiction."). The instant case has produced more than sixteen volumes of record over the course of three years, numerous depositions and discovery disputes, and significant consideration by the district court of multiple motions to dismiss claims or grant summary judgment. See Parker & Parsley Petroleum, 972 F.2d at 587 ("[T]he amount of judicial resources that the case has consumed is most important for our analysis as an indication of the familiarity of the forum with the case and its ability to resolve the dispute efficiently."). The familiarity of the district court with the merits of the Batistes' claims demonstrates that further proceedings in the district court would prevent redundancy and conserve scarce judicial resources, and we therefore conclude that principles of judicial economy, convenience, and fairness to the parties weigh heavily toward our determination that the district court abused its discretion in dismissing the Batistes' remaining claims.

After considering and weighing all the factors present in this case, and relying especially on our conclusion that the district court was intimately familiar with the Batistes' claims and the absence of any difficult state-law issue in the remaining claims, we thus conclude that the district court abused its discretion and reverse its decision dismissing Paul and Michael Batiste's conversion and misappropriation claims without

25

prejudice.  Furthermore, in the interest of further judicial economy and in light of our determination above that the Batistes' state-law claims are prescribed, we remand Paul and Michael Batiste's conversion and misappropriation claims to the district court with instructions to enter judgment in favor of all defendants except Bolden, disposing of all claims against such defendants.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court granting defendants summary judgment and dismissing Featherstone for lack of personal jurisdiction, REVERSE the district court's dismissal of Paul and Michael Batiste's misappropriation and conversion claims against all defendants except Bolden, and REMAND with instructions to enter judgment in favor of such defendants on those claims.