William E. EDDINS, et al.

v.

EXCELSIOR INDEPENDENT
SCHOOL DISTRICT, et
al.

Nos. 9:96–CV–107, 9:96–CV–108.

United States District Court,
E.D. Texas,
Lufkin Division.

March 15, 2000.

William Eugene Parham, Parham's Law Office, Hempstead, TX, for Plaintiffs.

David Feldman, Feldman & Rogers LLP, Jeffrey L. Rogers, Sheila Pimpler Haddock, Feldman & Rogers, Houston, TX, Wayne D. Haglund, Lufkin, TX, C. Robert Mace, Fulbright & Jaworski, Houston, TX, Craig Carter, Attorney General's Office, General Litigation Division, Austin, TX, for Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION RE: SUPPLEMENTAL JURISDICTION

HANNAH, District Judge.

These consolidated actions are referred to a United States magistrate judge with instructions to submit a written report and recommendation regarding dispositive motions. *See* 28 U.S.C. § 636(b)(1)(B).

The magistrate judge has submitted a report that recommends that the court decline to exercise supplemental jurisdiction over state law tort claims. Plaintiffs timely objected to the proposed findings, conclusions and recommendations of the magistrate judge. On February 24, 2000, defendants responded to plaintiffs' objections. (*See* Docket No. 166.)

Upon conducting a *de novo* review of the magistrate judge's report, plaintiffs' objec-

tions, and defendants' response, the court concludes that the magistrate judge correctly determined that (a) there is no common nucleus of operative facts pertaining to the federal claim over which the court has original jurisdiction and plaintiffs' alleged state law tort actions; and (b) plaintiffs' alleged state law tort actions would predominate over the single federal claim over which the court has original jurisdiction. Moreover, defendants' response argues correctly that plaintiffs' formal pleadings do not allege state law claims. It is therefore

**ORDERED** that plaintiffs' objections are **OVERRULED.** It is further

**ORDERED** that the report and recommendation of the magistrate judge is **ADOPTED.**

An order declining to exercise supplemental jurisdiction over plaintiffs' alleged state law tort claims will be entered separately.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: SUPPLEMENTAL JURISDICTION

HINES, United States Magistrate Judge.

These consolidated cases are referred to the undersigned United States magistrate judge for consideration of pretrial matters. The parties have raised the issue whether the court should exercise supplemental jurisdiction over state law causes of action over which it does not have original jurisdiction. This report addresses that issue.

### Nature of Suit

These consolidated actions emerge from a dispute over educational rights of two children, "Mary W." and "Christy McD.," who resided in Excelsior Independent School District (Excelsior ISD). Both children allegedly have learning disabilities and require special education services. Excelsior ISD sought to provide those services through a cooperative known as Shelby County Special Education Cooperative.

The original boundaries of the dispute were described previously. *See Eddins v. Excelsior ISD*, 1997 WL 470353 (E.D.Tex. Aug. 6, 1997).[1] Ultimately, plaintiffs requested administrative due process hearings wherein they challenged the children's placements and services provided by Excelsior ISD through the Shelby County Special Education Cooperative. *See id.* at *5. Plaintiffs also sought relief in the nature of monetary compensation and injunctive relief. *See id.* at *7. Specifically, plaintiffs sought a school funding cut-off; termination of personnel; a change of the executive administrator for the school; an apology from the school board at an open session; compensatory damages; and attorney's fees. *See id.*

At a prehearing conference, the Texas Education Agency (TEA) hearing officer concluded that the compensation and injunctive claims of plaintiffs were outside her jurisdiction. *See id.* at *5–6. Thus, the formal administrative hearings concerned only appropriate educational classifications and services for the two children. Ultimately, the parties reached agreement on these issues and announced settlement. *See id.* at *5.

1. Generally, plaintiffs maintain that Christy McD. was "provided no means by which to interact with children who were not special education children," and contend that the Shelby County Special Education Cooperative was not the least restrictive environment for her instruction. *Eddins v. Excelsior Indep. Sch. Dist.*, 1997 WL 470353 at *4 (E.D.Tex. Aug. 6, 1997). The crux of plaintiffs' complaint, therefore, is that the school district failed to "mainstream" Christy McD.'s education. *See id.*

As for Mary W., plaintiffs complain that Excelsior ISD initially failed to test Mary McD. to determine whether she needed special education, even though she was held back to repeat pre-kindergarten. *See id.* Further, even after Mary W.'s special education requirements were known, her mother was not included in "ARD meetings," and Mary W. received less specialized attention than the ARD committee recommended for her individualized education program. *See id.*

The TEA hearing officer entered judgments pursuant to the settlements. Each judgment required Excelsior ISD to make monetary payments to reimburse plaintiffs for expenses incurred, and to take prospective action regarding special education services.[2] Plaintiffs subsequently executed written settlement agreements and releases that acknowledge receipt of Excelsior's monetary payments. (*See* Def.'s Mot. for Summ.J., Exs. C, D, E, and F.)

The releases executed by plaintiffs contained language limiting the scope of their releases to the confines of the TEA administrative orders. Thus, it was apparent from the outset that plaintiffs did not view the TEA judgments as complete relief. The present litigation ensued.

In the instant cases, plaintiffs contend that Excelsior ISD did not honor its settlement agreements as embodied in the TEA judgments. Thus, they sue to enforce the provisions of the TEA administrative judgments. Second, they sue to enforce federally-guaranteed educational rights.[3] Third, they sue Excelsior ISD and other defendants for their alleged previous violations of plaintiff minors' federal civil rights, i.e., under general Reconstruction civil rights statutes.[4] Finally, plaintiffs seek to append various state law causes of action for breach of contract (settlement agreements), slander, wrongful.death, lost wages, and injunctive relief requiring termination of school administrators, replacement of teaching personnel, and an open-meeting apology from one school defendant's Board of Trustees.

## Proceedings

Although plaintiffs' amended complaints alleged multiple claims against multiple defendants, the court has narrowed issues

2. In the case of Mary W., Excelsior ISD was ordered to:
 1. Hire a consultant to do a comprehensive evaluation of the special education program at Excelsior ISD and the Shelby County Co-op;
 2. Allow Petitioner full access to the consultant during the period of review;
 3. Implement the changes recommended by the special education consultant by the 1994–95 school year as far as practicable; and
 4. Provide extended year comprehensive services up to a total cost of $5,000.00 paid to Mary W.'s parent, Sandy W.
*Eddins,* 1997 WL 470353 at *6.
The judgment in Christy McD.'s case required that Excelsior ISD:
 1. Hire a consultant to do a comprehensive evaluation of the special education program at Excelsior ISD and the Shelby County Co-op;
 2. Allow Petitioners full access to the consultant during the period of review;
 3. Implement the changes recommended by the special education consultant by the 1994–95 school year as far as practicable;
 4. Reimburse Petitioners $16,260.40 for travel and transportation of Christy Renea McD. to Martinsville Independent School District for prior school years;
 5. Reimburse Petitioners for all out-of-pocket attorney's fees paid to date;
 6. Provide future transportation for so long as Christy Renea McD. is a resident of Excelsior ISD and for so long as she is enrolled as a special education student at Martinsville Independent School District. The manner of provision for future transportation would be left to the determination of Excelsior ISD, to either reimburse Petitioners for transportation costs or provide transportation directly by the Excelsior ISD. The obligation to provide future transportation would cease in the event that Petitioners move out of the Excelsior ISD and/or if Christy Renea McD. ceases to be enrolled as a special education student at Martinsville Independent School District;
 7. Pay any cost of tuition to Martinsville Independent School District for Christy Renea McD.'s attendance as a special education student at Martinsville Independent School District, in the event that the Martinsville Independent School District imposes such a cost in the future. This requirement was further subject to Christy Renea McD.'s continued residence in the Excelsior ISD.
*Id.*

3. Specifically, plaintiffs seek to bring direct actions under two federal statutes, *viz.,* the Individuals with Disabilities Act ("IDEA"), *see* 20 U.S.C. § 1400 et seq., and the Rehabilitation Act of 1973 ("Rehabilitation Act"). *See* 29 U.S.C. § 794.

4. *See* 42 U.S.C. §§ 1981 – 1985.

and parties for trial. In sum, all defendants except Excelsior ISD have been dismissed. (*See* Docket Nos. 86 and 109.)[5] All federal claims against Excelsior ISD have been dismissed except for an action under 42 U.S.C. § 1983 for enforcement of the TEA administrative orders. (*See* Docket No. 86.) Thus, the remaining claims are the single Section 1983 action just mentioned, and assorted state law claims that plaintiffs seek to append under the court's supplemental jurisdiction.

## Supplemental Jurisdiction

Title 28 United States Code Section 1367 provides that: "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367 codified the judge-made doctrine of pendent and ancillary jurisdiction that began with *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[6]

Even when claims are so related to claims within the original jurisdiction that they form part of the same case or controversy, federal district courts are not always required to entertain them. Thus, the statute expressly provides that district courts may decline to exercise supplemental jurisdiction under any of the following circumstances:

(1) The claim raises a novel or complex issue of state law;

(2) The claim substantially predominates over the claim or claims over which the court has original jurisdiction;

(3) The court has dismissed all claims or which it had original jurisdiction; or

(4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

 In this circuit, the general rule is to decline the exercise of supplemental jurisdiction when all federal claims are dismissed or eliminated prior to trial. *See Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir.1989). However, this rule is neither mandatory nor absolute. *See id.* Rather, The Fifth Circuit reviews a district court's decision to decline supplemental jurisdiction for an abuse of discretion. *See Batiste v. Island Records, Inc.*, 179 F.3d 217, 226 (5th Cir.1999); *see also Robertson v. Neuromedical Center*, 161 F.3d 292, 296 (5th Cir.1998) ("[D]istrict court has wide discretion").

In determining whether a district court abused its discretion, the Fifth Circuit considers "both the statutory provisions of [Section 1376(c) ], as well as the Supreme Court's articulation of the scope and nature of district courts' discretion in exercising jurisdiction over pendent state law claims." *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir.1998). Thus, the Fifth Circuit considers both the provisions of Section 1376(c) and "the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Su-

---

**5.** A magistrate judge's report and recommendation calling for dismissal of defendant Texas Education Agency was submitted on September 7, 1999. (*See* Docket No. 109.) The court has not yet acted on that recommendation.

**6.** The Court held:

Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ...,' U.S. Const., Art. III, § 2, and the rela-

tionship between that claim and the state claim permits the conclusion that the entire action before the court comprises but on constitutional 'case.' ... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

*Id.*

preme Court outlined ..." *Batiste*, 179 F.3d at 227.

■ To be sure, the district court does not have unfettered discretion in refusing to entertain claims under its supplemental jurisdiction. In *Batiste*, the governing circuit court of appeals, in an opinion written by Chief Judge King, held that the district court abused its discretion in not exercising supplemental jurisdiction. First, the district court erred by not balancing factors of judicial economy, convenience, and fairness to the parties. *See id.* The case had been pending in the district court for almost three years, and trial was scheduled to begin one month later. *See id.* The case had produced "more than sixteen volumes of record, numerous depositions and discovery disputes, and significant consideration by the district court of multiple motions to dismiss claims or grant summary judgment." *Id.* at 228. The familiarity of the district court with the merits of the claims demonstrated that further proceedings in the district court would prevent redundancy and conserve scarce judicial resources. *See id.* Second, Judge King noted that the absence of any "novel or complex" issues of state law weighs towards the conclusion that the district court abused its discretion.[7] *See id.*

### Discussion and Analysis

■ In the instant cases, the court has dismissed all but one of the claims over which it had original jurisdiction. (*See* Docket No. 86.) That remaining claim, a Section 1983 action to enforce TEA administrative orders, has discrete boundaries whose parameters are easily defined by resort to the TEA orders. The factual issues are narrow; the relevant time period is confined to the period after entry of the orders.

Here, plaintiffs' state law action for breach of contract (settlement agreements) is synonymous with plaintiffs' Section 1983 action to enforce TEA orders. Suit has been pending almost four years; discovery on this issue has been completed; the court is familiar with the merits of the claim; no novel or complex issues of state law are involved; and trial is scheduled imminently. Normally, under *Batiste*, the court would abuse its discretion in refusing to entertain plaintiffs' breach of contract claims. However, plaintiffs recently made an unequivocal assertion to the court that they have "never pursued enforcement of a contract or settlement agreement ..." (*See* Pls.' Resp. to Def.'s Mot. for Summ.J. at 4.) Therefore, it would be futile and a waste of judicial resources for the court to exercise supplemental jurisdiction over plaintiffs' state law action for breach of contract.

The issue thus becomes whether the court should entertain plaintiffs' remaining state law tort claims. As to these, *Batiste* does not dictate that the court exercise its supplemental jurisdiction. First, elements of tort causes of action are different in each instance, and share no common nucleus of operative facts with the Section 1983 enforcement of TEA judgment claims. Next, relevant time periods predate the

7. The court compared two cases indicating when the district court abuses its discretion and when it does not. *See Batiste*, 179 F.3d at 227–28. First, the court quoted *Newport Ltd. v. Sears, Roebuck and Co.*, as an example when the district court abused its discretion:

[A]fter four years of litigation produced 23 volumes and thousands of pages of record, the preparation of a pretrial order exceeding 200 pages, over a hundred depositions, and according to counsel nearly two hundred thousand pages of discovery production, the declining to hear this case on the eve of trial constituted an abuse of the trial court's discretion.

941 F.2d 302, 307–08 (5th Cir.1991). The court then quoted *Carnegie–Mellon University v. Cohill*, as an instance where the district court's decision not to exercise supplemental jurisdiction was not an abuse of discretion:

When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to exercise jurisdiction.

484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

entry of the TEA administrative orders and settlement agreements. Third, trial of such issues would involve a broad, *de novo* review of the controversy from its inception, as opposed to a focused, specific review of Excelsior's compliance with TEA orders and private settlement agreements. Finally, no discovery has occurred with regard to the state tort causes of action.

After considering the Section 1376(c) factors and judicial economy, convenience, fairness, and comity, the court should not exercise its supplemental jurisdiction because the state tort claims substantially predominate over the single claim over which the court has original jurisdiction. A proper exercise of discretion is to decline to exercise jurisdiction over these claims.

### Recommendations

The court should dismiss plaintiffs' state law causes of action because plaintiffs now declare that they do not want to pursue a breach of contract claim, and because plaintiffs' remaining tort claims substantially predominate over the single, limited claim over which the court has original jurisdiction.[8]

### Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 6(a), 6(b), and 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *see Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *See Douglass*

*v. United Services Auto. Ass'n.,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

January 28, 2000.

---

8. Plaintiffs will not be prejudiced by proceeding in state court. Texas law provides that when an action is dismissed because of a want of jurisdiction of the federal district court, and within a specified period after the dismissal, the action is commenced in a court of proper jurisdiction, the period between the date of first filing and that of commencement in the second court is not counted as a part of the period of limitations, unless the opposite party shows in abatement that the first filing was in intentional disregard of proper jurisdiction.

See Tex.Civ.Prac. & Rem.Code Ann. § 16.064 (Vernon 1997).