# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2015

Lyle W. Cayce
Clerk

No. 14-31320
Summary Calendar

GLENN E. ALPHONSE, JR.,

Plaintiff-Appellant

v.

ARCH BAY HOLDINGS, L.L.C.; SPECIALIZED LOAN SERVICING, L.L.C.,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-330

Before REAVLEY, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Glenn Alphonse, Jr. appeals the district court's dismissal of his claims for lack of subject matter jurisdiction.  We AFFIRM.

Arch Bay Holdings, L.L.C. initiated foreclosure proceedings on Alphonse's house in 2010 after he defaulted on his mortgage.  Alphonse did not

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-31320

contest these proceedings in state court.  Instead, he filed suit in federal court against Arch Bay and the mortgage servicer Specialized Loan Servicing, L.L.C. ("SLS"), under the Louisiana Unfair Trade Practices Act ("LUTPA") and Federal Debt Collection Practices Act ("FDCPA").  Alphonse sought declaratory relief and damages.  He alleged that Arch Bay wrongfully seized and possessed his home through "robo-signing," a means of "attesting to foreclosure-related facts without first-hand knowledge."  *Alphonse v. Arch Bay Holdings, L.L.C.*, 548 F. App'x 979, 981 & n.3 (5th Cir. 2013) (citations and quotations omitted).

The district court granted the defendants' motion to dismiss as to all of the LUTPA claims and one of the FDCPA claims, with the *Rooker-Feldman* doctrine being one of the bases for dismissal.  We reversed, noting that we had found *Rooker-Feldman* inapplicable when faced with similar facts in *Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013).  *See id.* at 981-82.  We noted that "[t]he district court also dismissed Alphonse's various FDCPA claims that were not otherwise barred under *Rooker-Feldman*, but Alphonse does not press these claims on appeal."  *Id.* at 981.

On remand, Alphonse filed a memorandum seeking to establish diversity jurisdiction "now that his causes of action under Federal Law have been dismissed."  The defendants moved for summary judgment.  In an order soliciting information regarding the defendants' citizenship, the district court remarked that "any challenge to the dismissal of the FDCPA claims has been forfeited by the plaintiff and those claims are not mentioned in his opposition to the defendants' motion for summary judgment."  The court dismissed for lack of jurisdiction, finding a lack of diversity and noting that "any challenge to the dismissal of the FDCPA claims has been forfeited . . . ."  The court declined to exercise supplemental jurisdiction over the remaining state-law claims.  Alphonse timely appealed to this court.

2

No. 14-31320

DISCUSSION

Alphonse claims that both federal question and diversity jurisdiction exist in this case, or, alternatively, that the court should have exercised supplemental jurisdiction. He also claims that the district court failed to follow the magistrate judge's discovery order. We separately address each claim.

I.     *Federal Question Jurisdiction*

The existence of federal question jurisdiction hinges upon whether Alphonse has waived his FDCPA claims. As this court recognized, and as Alphonse concedes, he waived all but one of those claims during his initial appeal. *See id.* at 981. As a result, the district court was not permitted to consider those claims on remand. *See Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 836 (5th Cir. 2011). Alphonse maintains, however, that he did not waive his remaining FDCPA claim, which was the subject of the reversal by this court in the initial appeal. We disagree.

Alphonse's failure on remand to brief the one FDCPA claim that we revived in the first appeal constitutes abandonment of that claim. "[A] party may not allude to an issue in the district court, abandon it at the crucial time when the district court might have been called to rule upon it, and then resurrect the issue on appeal." *See Louque v. Allstate Ins. Co.*, 314 F.3d 776, 779 n.1 (5th Cir. 2002); *see also Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir. 1989) (collecting cases).

Some language in the district court's rulings on remand could be interpreted to mean that no federal claims were left after the first appeal and remand. If that was the district court's interpretation, and we are not sure that it was, Alphonse needed to explain to the district court why one FDCPA claim remained for review on remand. Not having done so, Alphonse waived the FDCPA claim.

3

## II.     *Diversity Jurisdiction*

We review subject matter jurisdiction *de novo*.  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008).  Subject matter jurisdiction on the basis of diversity "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side."  *Id.* (citation and quotations omitted).  When one of the parties is an LLC, its citizenship is determined by the citizenship of all of its members.  *Id.* at 1080.  Citizenship is based on domicile, i.e., where an individual resides and intends to remain.  *Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003).

The defendants argue that one of Arch Bay's members is, like Alphonse, a citizen of Louisiana.  Their declarations indicate that the member has resided in Louisiana since 1994 and been registered to vote in the state since 1996.  Moreover, the member has raised children in Louisiana, holds a Louisiana driver's license, owns vehicles registered in Louisiana, and is an active member of numerous social and cultural organizations in the state.  We have held that such factors may be used to establish domicile.  *See id.*

Alphonse does not contest these facts or offer any evidence that the member is not a citizen of Louisiana.  Instead, he argues that the standard established in *Harvey* "can be stretched to an illogical absurdity."  He claims that such an absurdity exists in this case because the non-diverse member is in fact a member of a member of one of Arch Bay's members, is a limited partner with no managerial responsibilities, and was difficult to locate.  These arguments are unpersuasive.

The Supreme Court has explicitly "reject[ed] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the

court may consult the citizenship of less than all of the entity's members." *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990).  Applying *Carden*, this court, as well as all other circuits to address the issue, have held that "the citizenship of a LLC is determined by the citizenship of all of its members." *Harvey*, 542 F.3d at 1080 (collecting cases).  Moreover, no case law has suggested that this conclusion may be disregarded when one of the LLC's members is an artificial entity comprised of additional entities.  Indeed, we have observed that the "appropriate tests for citizenship" involve "tracing [entities'] citizenships down the various organizational layers where necessary . . . ." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 (5th Cir. 2009); *see also Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 347-48 (7th Cir. 2006). Accordingly, we reject Alphonse's contention that less than all of an LLC's members may be considered when determining its citizenship.

### III.    *Magistrate Judge's Preliminary Discovery Order*

We review a district court's discovery-related rulings for abuse of discretion.  *See Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1441 (5th Cir. 1993) (collecting cases).  This includes a decision to defer to a magistrate judge's discovery order.  The court must defer to such an order unless the order is clearly erroneous or contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a).  An order is clearly erroneous if the court "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citations and quotations omitted).

Alphonse claims the district court failed to follow the magistrate judge's discovery order permitting him to conduct additional discovery regarding the citizenship of Arch Bay's non-diverse member.  He also asserts that the district court accepted the claims in the declarations from the member's employers

despite the fact that the magistrate judge expressed doubts about their credibility. Because the magistrate judge's order and credibility determinations were not clearly erroneous or contrary to law, Alphonse maintains, the court abused its discretion by failing to adopt them.

As Arch Bay notes, the district court did not fail to follow the magistrate judge's discovery order. Rather, it relied on the non-diverse member's declaration, a document that was not before the magistrate judge when it issued its order. That declaration outlined the member's extensive ties to Louisiana and corroborated the information contained in the declarations from two of his employers. Alphonse has not addressed this contention or argued that the court abused its discretion by relying on the declaration. Moreover, the magistrate judge did not actually find that the declarations from the non-diverse member's employers lacked credibility. Although it expressed sympathy with Alphonse's claims to that effect, it noted that "that's not for me, that's for [the district court] to evaluate . . . ." Thus, the district court did not fail to follow the magistrate judge's orders or contravene its findings. It simply found that new evidence, taken in conjunction with evidence already in the record, obviated the need for additional discovery.

## IV. *Supplemental Jurisdiction*

We review a district court's decision to decline supplemental jurisdiction for abuse of discretion. *Batiste v. Island Records, Inc.*, 179 F.3d 217, 226 (5th Cir. 1999). A district court may decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances,

there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Other relevant factors include "judicial economy, convenience, fairness, and comity." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 601-02 (5th Cir. 2009). As a general rule, "a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial . . . ." *Id.* at 602.

As we have discussed, Alphonse has abandoned his federal claims. The remaining claims involve novel and complex issues of state law. *See Alphonse*, 548 F. App'x at 984-86. As a result, the first three Section 1367(c) factors, considerations of comity, and the general rule supporting dismissal when all federal claims are eliminated all weigh in favor of declining supplemental jurisdiction.

Alphonse does not contest these considerations but emphasizes that the case has been ongoing for several years and that the parties have expended resources on discovery, dispositive motions, and an appeal to this court. Thus, he argues, considerations of judicial economy and convenience weigh in favor of maintaining jurisdiction. This position finds some support in our case law. We have held that, in certain situations, a district court may abuse its discretion by declining to exercise supplemental jurisdiction over a suit after the parties have invested a significant amount of resources in the matter, even when no federal claims remain. *See Brookshire Bros.*, 554 F.3d at 595, 602-603 (collecting cases).

In *Brookshire Brothers* and our precedents cited therein we emphasized that the suits did not involve novel and complex issues of state law. *See id.* Nevertheless, the presence of novel issues of state law is not controlling. As we have noted, when analyzing supplemental jurisdiction, "no single factor is dispositive, and this Court must review the district court's decision in light of

the specific circumstances of the case at bar." *Id.* at 602. Indeed, we observed in *Brookshire Brothers* that "even if this case involved novel or complex state law issues, the significant amount of judicial resources invested by the district court would lead us to find that the district court abused its discretion in remanding this case." *Id.* at 603.

Here, the "specific circumstances" demonstrate that the court did not abuse its discretion by declining to exercise supplemental jurisdiction. First, the resource expenditures are not analogous to those in *Brookshire Brothers*. That case "generat[ed] more than 1,300 entries in the district court docket. The district court decided forty-one dispositive motions, fourteen *Daubert* motions, and seven other motions *in limine*. Discovery had closed and the parties were making final preparations for trial. Trial . . . was continued four times." *Id.* at 598. While the resources expended by the parties in this case are not insubstantial, they do not approach this exceptional level. Moreover, Alphonse has not argued that the research or discovery he conducted in the district court would need to be repeated in state proceedings. Absent such a risk, the investment of resources does not constitute a compelling reason to maintain supplemental jurisdiction. *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587-88 (5th Cir. 1992).

Second, other common-law factors supported retaining jurisdiction in *Brookshire Brothers*. In particular, the court noted the "significant risk that [the plaintiff] will attempt to re-litigate in state court rulings made against it by the district court . . . ." *Brookshire Bros.*, 554 F.3d at 603. Alphonse has not argued that such a danger exists here. Indeed, a large portion of the proceedings in the district court related to the court's disposition of Alphonse's FDCPA claims and attempts to determine whether resolution of the state-law claims was appropriate. Thus, as in *Parker & Parsley*, "we do not expect the

8

relitigation of other matters to pose undue hardship.  The defendants can hardly contest jurisdiction, and we do not see other obstacles to resolution of the case in the state court, save those that ought to be there . . . ."  972 F.2d at 588.

Given the presence of novel and complex issues of state law in this case, as well as Alphonse's failure to argue or demonstrate that issues relating to resource expenditures or re-litigation weighed in favor of maintaining the case in the federal forum, the court did not abuse its discretion by declining to exercise supplemental jurisdiction.

AFFIRMED.