800 So.2d 1061 (2001)
UNITED GENERAL TITLE INSURANCE COMPANY,
v.
CASEY TITLE, LTD., John H. Norman & Northland Insurance Company Number.
No. 01-CA-600.
Court of Appeal of Louisiana, Fifth Circuit.
October 30, 2001.
*1062 Kurt D. Engelhardt, Kelly L. Covington, Hailey, McNamara, Hall, Larmann & Papale, L.L.P., Metairie, LA, Counsel for Casey Title, Ltd. and John H. Norman, Defendants/Appellants.
C. Lawrence Orlansky, Rachel Wendt Wisdom, Stone, Pigman, Walther, Wittmann & Hutchinson, L.L.P., New Orleans, LA, Counsel for John A. Poche, Jr., Third Party Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
This matter originated as a suit by a title insurance company against its title insurance agent and a title examiner for errors and omissions in connection with title examinations and issuance of title insurance by the agent. Before us on this appeal is a judgment that dismissed the agent's and examiner's third-party demand against another mortgage holder on the subject properties, pursuant to an exception of lis pendens. We affirm.

Facts
On December 14, 1998 United General Title Insurance Company filed suit in Jefferson Parish against Casey Title, Ltd., John H. Norman, and their insurer, Northland Insurance Company.[1] United General alleged that on September 13, 1996 Casey was appointed as an agent of United General with authority to originate and solicit applications for title insurance, to issue commitments to insure, and to countersign and issue policies of title insurance. United General further alleged that Norman examined titles or abstracts of title to various properties and provided analysis of those examinations, in reliance upon which *1063 he would, on behalf of Casey, countersign and issue policies underwritten by United General.
According to the petition, on January 30, 1996 Casey and Norman closed three refinancing transactions under which Louwanda and Bruce Mullin refinanced mortgages on three rental properties they owned in Orleans Parish. In connection with the refinancing, Norman authorized Casey to issue United General policies on each transaction, insuring the mortgage lien of the lender, Schwegmann Bank and Trust Company, to be in first position on the property described in each respective policy. The petition alleged that the indebtedness secured by the liens insured in the policies was transferred to and is now held by United Companies Lending Corporation (hereafter "United Lending").
The petition further alleged that Norman, in conducting the title examination, learned that there were mortgages in favor of John Poche on each of the properties that would be superior in rank to the mortgages in favor of Schwegmann being insured by the United General policies. However, in order to make the Schwegmann mortgages rank first, Poche would have had to subordinate his interest to Schwegmann's. No release or subordination of that interest was obtained at the closing of the insured mortgages.
United General asserted that it received notice of the error or omission in connection with the title examination and closing by Casey and Norman after October 5, 1998, when the then-holder of the insured mortgages notified United General of the claims asserted in favor of Poche and that those claims were asserted to be superior in rank to the mortgages insured by United General to be in first position. As a result, United General alleged it had been damaged to the extent of the payments necessary to satisfy the prior liens against the properties, plus its attorneys' fees and costs incurred.
United General stated that pursuant to its agreement with Casey, Casey agreed to indemnify United General for any loss it sustained on account of any intentional or negligent act in connection with a closing by Casey or its agents, where a policy underwritten by United General was issued.
Casey and Norman filed an answer raising various affirmative defenses that incorporated a third-party demand against John Poche. In the third-party demand Casey and Norman alleged that Poche had expressly agreed to subordinate all mortgages in his favor on the three properties, prior to or at the time of the closing of the transaction on January 30, 1996, and that prior to the closings Poche reaffirmed to both Norman and to Bruce Mullin, the mortgagor, his commitment to subordinate his mortgages. However, Poche declined subsequent requests by Norman to execute the subordinations.
Casey and Norman asserted that Poche's refusal to execute the subordinations resulted in his becoming unjustly enriched and they prayed that Poche be held liable to them for all sums they may become legally obligated to pay as a result.
On June 29, 2000 John Poche filed a declinatory exception of lis pendens, on the ground that there currently were three suits initiated by United Companies Lending Corporation against the Mullins pending in Civil District Court in Orleans Parish, which sought to foreclose on the mortgaged properties. Poche asserted that he was the superior mortgage holder of record on the three Mullin properties and that he had filed an intervention in each of the Orleans Parish actions asserting his rights as owner of the earliest-filed *1064 and first-ranking mortgage on the properties.
Poche asserted further that United Lending had filed a reconventional demand against him in the Orleans Parish proceedings, which he alleged involved the same parties, in the same capacities, and the same transaction or occurrence as the third-party demand filed against him by Casey and Norman in the Jefferson suit. He pointed out that in the Orleans Parish action, United Lending contended that he failed to subordinate his interest in the Mullin properties to those of United Lending, and that in the Jefferson Parish action, Norman and Casey, as agents for United Lending's title insurer, make the same claim. Therefore, Poche asserted, the later-filed Jefferson Parish third-party demand should be dismissed pursuant to La.C.C.P. art. 531.[2]
On October 5, 2000 the Jefferson Parish district court rendered judgment in favor of Poche, maintaining the exception of lis pendens and dismissing the third party demand of Casey and Norman. The trial judge assigned written reasons as follows, in pertinent part:
The court finds that the reconventional demand in Orleans and the third-party demand in the instant suit involve the same dispute about the same alleged agreement to subordinate between the parties. This same transaction or occurrence in both suits depends on resolution of identical factual and legal issues.
The court further finds that the two pending lawsuits involve the same identity of parties. There is a mutuality of interest for lis pendens analysis in that the agent of United Lending is asserting the same claim against Poche in Jefferson Parish: Casey and Norman were acting as agents of United General who insured United Lending in this matter.
The court thus finds that the requirements of Code of Civil Procedure article 531 are satisfied. The later filed third-party demand in this proceeding is dismissed.
On appeal Casey and Norman assert that the trial court erred in finding that the Orleans Parish action involved "the same parties in the same capacities" as a basis for maintaining the exception of lis pendens and dismissing the third-party demand of Casey Title and Norman against Poche.

Judicial Notice of Orleans Parish Proceedings
In his brief on this appeal Poche states that after the Jefferson court granted the exception of lis pendens, Casey and Norman filed an intervention in the Orleans Parish proceedings, which were tried while this matter was pending on appeal. Poche requests this Court to take judicial notice of the judgment in the Orleans action, as well as the pleadings filed therein, and attaches certified copies of the documents to is brief.[3]
La.C.E. art. 202 provides for mandatory judicial notice of federal and state laws and of certain ordinances, as well as for notice of various other legal matters, on request by a party and with proper documentation. Those other matters, listed in the article, include the following: presidential and gubernatorial *1065 proclamations; rules of Louisiana state agencies, boards and commissions; ordinances of political subdivisions of this state; procedural rules of federal and state courts; rules of federal and state agencies, boards and commissions; and laws of foreign countries, international law and maritime law.
However, Article 202 does not allow courts to take judicial notice of other courts' proceedings. Rather, documentation of such proceedings must be offered into evidence in the usual manner.
A court may take judicial notice of its own proceedings.... However, there is no provision in Louisiana law for a court of this state to take judicial notice of suit records in other courts.... To be considered, documents of other courts must be introduced as evidence in the record in the trial court.
State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1053-1054, writ denied, 765 So.2d 1062 and 765 So.2d 1066.
Further, examination of exhibits attached to an appellate brief, but not offered into evidence at trial, is beyond the scope of our review. Davis v. St. Jude Medical Center, Inc., 94-353 (La.App. 5 Cir. 10/25/94), 645 So.2d 771, 772, writ denied, 94-2864 (La.1/27/95), 649 So.2d 387. An appellate court is precluded from considering evidence that is not part of the record. State v. Pertuit, 95-935 (La.App. 5th Cir.3/13/96), 673 So.2d 1055, 1057.
It has been held that Article 202(B)(e) allows courts to take judicial notice of court decisions that have the effect of law. Thomas v. Charles Schwab & Co., Inc., 95-1405 (La.App. 3 Cir. 9/25/96), 683 So.2d 734, 737. That would not apply here, however, because we are asked to notice proceedings of a district court, which have no effect except in the specific case in which the rulings are made.
Accordingly, our review of the ruling granting the lis pendens exception is limited to the documents that were presented to the trial court.

Exception of Lis Pendens
La.C.C.P. art. 531 provides,
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.
The test for whether an exception of lis pendens should be granted is to inquire whether a final judgment in the first suit would be res judicata in the subsequently filed suit. Warner v. Carimi Law Firm, 98-613 (La.App. 5 Cir. 12/16/98), 725 So.2d 592, 600-601, writ denied, 99-0466 (La.4/1/99), 742 So.2d 560. The exception of lis pendens has the same requirements as the exception of res judicata; it is properly granted when the suits involve the same transaction or occurrence between the same parties in the same capacities. Warner v. Carimi Law Firm, 725 So.2d at 601.
Casey and Norman argue, first, that the two suits must be considered different because the Orleans Parish suit originated as executory process, while the Jefferson Parish action is an ordinary proceeding. Under the procedural rules for cumulation of actions, Casey and Norman assert, they could not have joined their claim in United Lending's suit for executory process because the two actions do not employ the same form of procedure. La. C.C.P. arts. 462-463.
*1066 The claim made subject of the lis pendens exception, however, is not the executory process action, but rather United Lending's reconventional demand in response to John Poche's intervention in the executory process suit. The allegations of the reconventional demand make clear that United Lending's reconventional demand arises out of the same transaction as Casey and Norman's third-party demand in this suitspecifically, Poche's alleged agreement to subordinate his mortgage interests to United Lending's and his subsequent refusal to execute documents reflecting a subordination.
Prior to 1990, La.C.C.P. art. 531 required that suits made the object of the exception of lis pendens must "have the same object." However, the 1990 amendment of the article removed the "same object" requirement, simply requiring that the suits arise out of the same transaction or occurrence. The fact that different types of relief are requested does not always exclude consideration of the exception of lis pendens when those suits involve the same issues. Spallino v. Monarch Sign Co., 00-447 (La.App. 3 Cir. 10/12/00), 771 So.2d 784, 788.
Thus, the real issue is whether the Orleans Parish action involves the same parties in the same capacities as Casey and Norman's third-party demand on John Poche in this suit.
The trial judge concluded that United Lending and Casey/Norman are "the same parties in the same capacities" because Casey/Norman acted as agent of United General in the underlying title insurance transaction and United General is the insurer of United Lending.
Casey and Norman argue there was no identity of parties because Casey and Norman could not have brought their delictual, quasi-contractual, and equitable claims against Poche in the Orleans Parish action for executory process. They assert that in the Jefferson Parish suit they were seeking monetary damages for misrepresentation and/or breach of contract based on detrimental reliance and unjust enrichment, while the matter pending in Orleans Parish was merely a petition for executory process with no determination of liability.
As noted above, however, what we must consider is not the executory process portion of the Orleans Parish suit, but rather the reconventional demand of United Lending to Poche's intervention.
In the reconventional demand United Lending asserted that it had agreed to refinance the Schwegmann Bank mortgages provided that United Lending would enjoy the same rank and priority as the loans that were being refinanced. United Lending stated that Poche was contacted prior to the closings of the loans and agreed that he would subordinate the mortgages in his favor to the new United Lending loans, so that after the refinancing he would enjoy the same relative priority on the Mullin properties as before. In reliance on Poche's agreement, the United Lending loans were closed and the Schwegmann Bank loans were paid off. According to United Lending, subsequent to those closings Poche changed his position and declined to execute an agreement to subordinate. United Lending sought either specific performance of Poche's agreement to subordinate or damages consisting of any sums payable as a result of any finding that Poche's mortgage liens were superior in rank to those held by United Lending.
Casey/Norman's reconventional demand against Poche in the Jefferson Parish suit, as mentioned above, alleged that Poche expressly agreed to subordinate his mortgages, that he believed and expected to have a second mortgage position on the *1067 properties, but that he declined subsequent requests to execute the subordination. Casey/Norman asserted that Poche is liable for misrepresentation and unjust enrichment and should be cast to Casey and Norman for all sums they may become obligated to pay to the plaintiff, United General Title.
As noted above, the exception of lis pendens has the same requirements as the exception of res judicata. Accordingly, we look to cases on res judicata to ascertain how they interpret "identity of parties."
Identity of parties does not mean the parties must be the same physical or material parties, but they must appear in the suit in the same quality or capacity. Morris v. Haas, 95-75 (La.App. 5 Cir. 5/30/95), 659 So.2d 804, 810, writ denied, 95-2519 and 95-2545 (La.12/15/95), 664 So.2d 441.
[T]he preclusive effect of a judgment binds the parties to the action and nonparties who are deemed the "privies" of the parties in these limited circumstances: (1) the nonparty is the successor in interest of a party; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interests were adequately represented by a party to the action who may be considered the "virtual representative" of the nonparty because the interests of the party and the nonparty are so closely aligned.... The concepts of control and virtual representation are narrowly construed and are not satisfied merely by showing that the party and the nonparty have common or parallel interests in the factual and legal issues presented in the respective actions.
Hudson v. City of Bossier, 33,620 (La.App. 2 Cir. 8/25/00), 766 So.2d 738, 743-744, writ denied, 00-2687 (La.11/27/00), 775 So.2d 450.
The application of res judicata does not require that the parties be actually the same physical parties, but only that they be the same parties in the legal sense of the word. Therefore, the requirement of identity of parties is satisfied where a successor of one of the parties is involved. Lastie v. Warden, 611 So.2d 721, 723 (La. App. 4 Cir.1992), writ denied, 614 So.2d 64 (La.1993).
Applying that definition in a class action suit, the Fourth Circuit found that an identity of parties existed between two class action cases in which the named plaintiffs in each case were the proposed class representatives for the exact same class of people, since the definitions of the class as alleged were identical in the two cases. Duffy v. Si-Sifh Corp., 98-1400 (La.App. 4 Cir. 1/9/99), 726 So.2d 438, 443, writ denied, 99-0372 (La.4/30/99), 741 So.2d 14. Thus, the court concluded, the parties were the same in the legal sense of the word and res judicata applied to prevent the second-filed action from proceeding as a class action: "The `party plaintiffs' in the [prior] case are all the members of the defined class; the `party plaintiffs' in the instant case are the very same people. The fact that different proposed representatives filed suit in the instant case does not affect that analysis." Id.
The insured and the insurer share the same quality as parties and, in essence, their identities are virtually merged into one, to the extent of the policy limits. Roland v. Owens, 00-1846 (La.App. 5 Cir. 4/24/01), 786 So.2d 167, writ denied, 01-1500 (La.8/31/01), 795 So.2d 1213,.
We find the same logic pertains to this case. Although Casey/Norman, United General and United Lending are different legal entities, for purposes of the title insurance they were the same: as noted by the trial court, United General is United Lending's insurer and the same "person" *1068 in the legal sense of the word for purposes of this suit, while Casey/Norman were United General's agent and, as such, also the same "person" in the legal sense here.
Accordingly, we find no error in the judgment of the district court. For the foregoing reasons, the judgment is affirmed. Appellants are cast for costs of this appeal.
AFFIRMED.
NOTES
[1] Northland Insurance was later dismissed by summary judgment based on a coverage defense.
[2] Filed as exhibits to the exception of lis pendens were copies of documents from the Orleans Parish proceedings, including the petitions for executory process, Poche's intervention into the proceedings, and United Lending's reconventional demand to Poche's intervention.
[3] Poche asserts that the factual issue of whether he agreed to subordinate his mortgage position was fully adjudicated and decided by the Orleans Parish judge in Poche's favor.