# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 11, 2013

No. 13-30154

Lyle W. Cayce
Clerk

GLENN E. ALPHONSE, JR.,

Plaintiff–Appellant

v.

ARCH BAY HOLDINGS, L.L.C.; SPECIALIZED LOAN SERVICING, L.L.C.,

Defendants–Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-330

Before STEWART, Chief Judge, KING, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Glenn E. Alphonse's ("Alphonse") home was foreclosed on. Instead of challenging the foreclosure proceeding itself or appealing the foreclosure in Louisiana state court, Alphonse sued in federal court under the Louisiana Unfair Trade Practices Act ("LUTPA"). The district court dismissed for lack of subject matter jurisdiction on grounds that all parties now acknowledge are erroneous under subsequently decided Fifth Circuit precedent.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30154

Based upon this and its other grounds, we reverse the district court's dismissal and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

The dispute in this case arose from the foreclosure of Alphonse's home in Louisiana. Alphonse obtained a mortgage loan from WMC Mortgage Corporation, who later assigned the mortgage note to Arch Bay Holdings, LLC–Series 2010B ("Series 2010B"). Alphonse's mortgage contained a "confession of judgment" clause. Louisiana law authorizes summary proceedings to obtain a judgment of foreclosure on mortgages that contain a "confession of judgment" clause. The summary proceedings are called "executory proceedings" or the "executory process." *See* La. Code Civ. Proc. Ann. art. 2631 (2012).[1]

Alphonse defaulted on his mortgage in 2010, and Series 2010B filed a petition to enforce the mortgage and foreclose in Louisiana state court through

---

[1] *See also Ross v. Brown Title Corp.*, 356 F. Supp. 595, 597 (E.D. La. 1973). In *Ross*, the court provided the following useful background about executory process:

> Executory procedure has been utilized for centuries in the various continental jurisdictions, and in those portions of the Western Hemisphere which inherited their procedural law in whole or in part from Spain. Its characteristics are firstly, the ex parte judicial enforcement by the creditor on maturity or default of an obligation formally acknowledged at its confection before a notary or judge, without any necessity of obtaining judgment contradictorily against the debtor; and secondly, the assertion by the debtor of whatever defenses he may have by way of opposition or injunction to arrest the seizure and subsequent judicial sale of the debtor's property. Its theoretical bases are that the debtor has already confessed judgment on the obligation before a public officer; that this confession is entitled to at least prima facie judicial recognition; and that its enforcement should be arrested in the same manner as the enforcement of a judgment is arrested. If the debtor has no defense on the obligation, the proceeding remains an ex parte one.

*Id.* (citing Henry G. McMahon, *The Historical Development of Executory Procedure in Louisiana*, 32 Tul. L. Rev. 555, 556 (1958)).

No. 13-30154

executory proceedings. The state court granted the petition and authorized the issuance of a writ of sale and seizure. In 2011, Series 2010B assigned the mortgage note to Deutsche Bank, and in 2012, Alphonse's home was sold at a Sheriff's auction.

Importantly for this appeal, Alphonse did not intervene and object in the executory proceedings in state court, nor did he appeal the judgment. Instead, Alphonse filed the instant federal action against Arch Bay Holdings, LLC ("Arch Bay") (the parent company of Series 2010B) and Specialized Loan Servicing, LLC ("SLS"), the mortgage servicer,[2] under LUTPA and the Federal Debt Collection Practices Act ("FDCPA"), seeking declaratory relief and damages. Specifically, Alphonse alleged that Arch Bay wrongfully seized and possessed his home through essentially fraudulent means involving inauthentic supporting documents, i.e., "robo-signing."[3]

Arch Bay and SLS moved to dismiss Alphonse's federal complaint, and the district court granted their motion, dismissing the action with prejudice. The district court held that the *Rooker–Feldman* doctrine[4] deprived the court of

---

[2] A "mortgage servicer" is the entity "responsible" for "receiving any scheduled periodic payments from a borrower pursuant to the terms of a[] mortgage loan," often in exchange for fees from the lender or holder of the mortgage note. 12 C.F.R. § 1024.2(b).

[3] *See* Nestor M. Davidson, *New Formalism in the Aftermath of the Housing Crisis*, 93 B.U. L. Rev. 389, 409–10 (2013) ("[R]obosigning [includes the practice of] attesting to foreclosure-related facts without first-hand knowledge. . . . The HUD Inspector General reviewed files on claims over the 2009 and 2010 fiscal years, and revealed practices of signing hundreds of affidavits per day, with daily production goals set for the number of affidavits to be processed." (citation omitted)).

[4] The *Rooker–Feldman* doctrine derives from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *See generally* Suzanna Sherry, *Judicial Federalism in the Trenches: The Rooker–Feldman Doctrine in Action*, 74 Notre Dame L. Rev. 1085, 1087–93 (1999). The doctrine holds that lower United States federal courts cannot not sit in direct review of state court decisions unless Congress has specifically authorized such relief. *See id.* In short, federal courts below the Supreme Court must not become a court of appeals for state court decisions; the plaintiff should find a remedy in state court. *See id.*

jurisdiction to review the state court judgment which ordered a writ of seizure and sale of property. The district court reasoned that "some of the claims against Arch Bay and SLS were so inextricably intertwined with the state court foreclosure proceeding that [the court] could not exercise jurisdiction over them." Specifically, the district court dismissed the LUTPA claims against Arch Bay and against SLS under *Rooker–Feldman*. The district court also alternatively held that res judicata barred the LUTPA claims against Arch Bay. Finally, the court held that the LUTPA claims against Arch Bay should be dismissed for the additional reason that Delaware law determines Arch Bay's liability, and under Delaware law, Series 2010B is the real party in interest and is a separate juridical entity from Arch Bay. In other words, Alphonse sued the wrong defendant. The district court also dismissed Alphonse's various FDCPA claims that were not otherwise barred under *Rooker–Feldman*, but Alphonse does not press these claims on appeal.

In the time between the district court's judgment and this appeal, the Fifth Circuit decided *Truong v. Bank of America* which held—on similar facts—a federal court's jurisdiction is not prohibited under *Rooker–Feldman* unless the plaintiff "seek[s] to overturn the state-court judgment." *Truong v. Bank of Am., N.A.,* 717 F.3d 377, 381–383 (5th Cir. 2013). Since the damages Truong "requested were for injuries caused by the banks' actions, not injuries arising from the foreclosure judgment," the Fifth Circuit held that the district court erred by dismissing for lack of jurisdiction under *Rooker–Feldman*. *Id.* at 383–85.

Arch Bay and SLS concede that the district court's holding on the *Rooker–Feldman* issue was erroneous under this Court's recent decision in *Truong*. They assert, however, that the district court's decision dismissing Alphonse's claims with prejudice should nonetheless be affirmed because of res judicata and Series 2010B's separate juridical status.

No. 13-30154

## II. DISCUSSION

### A.     Jurisdiction, Standard of Review, & Applicable Law

The court has jurisdiction over the final judgment of the district court under 28 U.S.C. § 1291. This Court reviews de novo a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "The res judicata effect of a prior judgment is a question of law that we review *de novo*." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013) (citing *Spicer v. Laguna Madre Oil & Gas II, LLC* (*In re Tex. Wyo. Drilling, Inc.*), 647 F.3d 547, 550 (5th Cir. 2011)). This Court reviews a dismissal for failure to state a claim de novo. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

A federal court sitting in diversity applies the forum state's substantive law and conflict-of-law rules. *Truong*, 717 F.3d at 381 (citing *Coe v. Chesapeake Exploration, LLC*, 695 F.3d 311, 316 (5th Cir. 2012)). "When construing a state statute absent explicit state-court guidance, we must attempt to predict state law, not to create or modify it." *Id.* (citation and internal quotation marks omitted). Thus, in this case, Louisiana law applies, except where discussed below.

### B.     Whether Res Judicata[5] Precluded the District Court from Considering Alphonse's LUTPA Claims Against Arch Bay and SLS

Arch Bay and SLS argue that the district court's judgment should be affirmed because the res judicata effect of the foreclosure judgment bars Alphonse's LUTPA claims. Under Louisiana's res judicata statute,

---

[5] The issue in this appeal is perhaps best characterized as issue preclusion, since it involves the preclusive effect of issues which could have been raised in the foreclosure proceeding, as applied to litigation with Arch Bay and SLS, which were not parties to the state court judgment. However, because the applicable Louisiana statutes use the term "res judicata," this term will be used throughout this opinion.

a second action is precluded when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Burguieres v. Pollingue*, 2002-1385, p. 8 (La. 2/25/03); 843 So. 2d 1049, 1053; *see also* La. Rev. Stat. Ann. § 13:4231 (2013). The parties agree the foreclosure judgment was final and valid, and that the pending claims on appeal arose from the same transaction or occurrence: defendants' debt-collection activities with regard to plaintiff's mortgage debt. Thus, to determine whether the district court correctly decided the res judicata question we must determine whether there exists sufficient "identity of the parties" between Arch Bay (the parent company) and Series 2010B (the judgment creditor) as well as between SLS (the mortgage servicer) and Series 2010B.

"The burden of proof is upon the [party asserting res judicata] to establish the essential facts to sustain the plea of res judicata." *Denkmann Assocs. v. IP Timberlands Operating Co.*, 96-2209, p. 8 (La. App. 1 Cir. 2/20/98); 710 So. 2d 1091, 1096 (citation omitted), *writ denied*, 98-1398 (La. 7/2/98); 724 So. 2d 738. "If any doubt exists as to its application, the exception of res judicata must be overruled and the second suit maintained." *Id.* (citation omitted).

"Identity of parties does not mean the parties must be the same physical or material parties, but they must appear in the suit in the same quality or capacity." *United Gen. Title Ins. Co. v. Casey Title, Ltd.*, 01-600, p. 10 (La. App. 5 Cir. 10/30/01); 800 So. 2d 1061, 1067 (citation omitted). "Identity of parties can also be satisfied when a privy of one of the parties is involved." *Burguieres*, 2002-1385 at 8, 843 So. 2d at 1054 n.3. A Louisiana judgment binds nonparties

No. 13-30154

who are deemed the "privies" of the parties to the original judgment in the following limited circumstances:

> (1) the nonparty is the successor in interest of a party; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interests were adequately represented by a party to the action who may be considered the "virtual representative" of the nonparty because the interests of the party and the nonparty are so closely aligned.

*United Gen. Title Ins. Co.*, 800 So. 2d at 1067. "The concepts of control and virtual representation are narrowly construed and are not satisfied merely by showing that the party and the nonparty have common or parallel interests in the *factual and legal issues* presented in the respective actions." *Id.* (citation omitted) (emphasis added).

Alphonse argues the district court committed reversible error by holding without factual development, that there existed a sufficient "identity of the parties" between Arch Bay and Series 2010B and between SLS and Series 2010B for res judicata purposes. Arch Bay and SLS appear to advance the "virtual representative" theory to support their argument that the judgment should be affirmed. For the reasons stated below, the district court erred when it dismissed Alphonse's declaratory relief claims because Arch Bay and SLS did not meet their burden to show an identity of the parties at the motion to dismiss stage.

*a. Identity Between Series 2010B and its Parent, Arch Bay*

Arch Bay argues that it has identical interests to and is the "virtual representative" of Series 2010B in the foreclosure suit as the alter ego of Series 2010B, and thus it possesses an identity of interest. In support of its argument, Arch Bay cites a federal district court opinion (sitting in diversity and applying Louisiana law) in which the court held a parent and subsidiary to be "legally identical" for purposes of a discrimination claim. The court there held:

7

No. 13-30154

> Considering that WDSU and Pulitzer share a common CEO/president, Ken Elkins, that WDSU is wholly-owned by Pulitzer, that Ken Elkins and Mary Lynn Roper testified in the state proceeding and that plaintiff formerly characterized them as a "single employer," the Court finds that WDSU and Pulitzer are legally identical for *res judicata* purposes in this proceeding because they have identical interests and share the same position as parties with regard to plaintiff's discrimination claims.

*Zatarain v. WDSU-Television, Inc.*, Civ. A. No. 94-1018, 1995 WL 295317, at *3 (E.D. La. May 8, 1995), *aff'd on other grounds*, 79 F.3d 1143 (5th Cir. 1996) (per curiam) (unpublished).

However, the court's analysis in *Zatarain* turned on facts, such as the common CEO/President, which were particularly pertinent to the plaintiff's discrimination claim. In contrast, here, the court dismissed Alphonse's claims and found an identity of interest without any factual development. On the other hand, Series 2010B is a Series LLC,[6] and Series LLCs only exist to represent the interest of the parent LLC, which in this case is Arch Bay. But, in light of the fact that the legal separation of Series 2010B and its parent, Arch Bay, is a fact-bound question, as discussed *infra* at Part II.C, the identity of these parties should not have been decided in Arch Bay's favor on its motion to dismiss. This is especially true because, under Louisiana law, "[t]he concepts of control and virtual representation are narrowly construed and are not satisfied merely by showing that the party and the nonparty have common or parallel interests in the factual and legal issues presented in the respective actions." *Hudson v. City of Bossier*, 33,620, p. 8 (La. App. 2 Cir. 8/25/00); 766 So. 2d 738, 743–44 (citation omitted), *writ denied*, 2000-2687 (La. 11/27/00); 775 So. 2d 450.

However, as discussed below, the separate juridical status of a Series LLC with respect to third party plaintiffs remains an open question. We remand

---

[6] A "Series LLC" is basically a business entity within a business entity.

because there are insufficient facts in the record to determine whether the Series LLC in this case is truly separate. The important point is that the res judicata identity of parties question—whether Series 2010B and its parent Arch Bay have identical interests—ought in fairness be considered together with the question of whether Series 2010B is in fact a distinct juridical entity.

Ultimately, Arch Bay did not meet its burden to show an identity of interest in their motion to dismiss between Series 2010B and Arch Bay, and we therefore remand for further consideration of this issue together with the question of Series 2010B's separate legal status.

*b. Identity Between Series 2010B and SLS, the Mortgage Servicer*

SLS argues that Alphonse's claim against SLS should be barred because, as the mortgage servicer, SLS was Series 2010B's agent, and thus, SLS and Series 2010B share an identity of interest. SLS primarily bases its argument on the Louisiana court of appeal's decision in *United General Title Insurance*, 800 So. 2d at 1067–68, in which the court affirmed the state district court's determination that the parties were the same for purposes of the suit because they were successors. SLS argues *United General Title Insurance* stands for the proposition that an agency relationship standing alone is sufficient to establish identity of interest for purposes of Louisiana res judicata.

SLS's argument fails. *United General Title Insurance* was decided based on the particular facts of that case, whereas this case was decided on a motion to dismiss in which the defendants did not produce competent evidence to establish that an identity of interest existed between SLS and Series 2010B. Even assuming an agency relationship existed between SLS and Series 2010B, *United General Title Insurance* held that identity of the interest existed between a title insurer and its insured, reasoning they "share the same quality as parties and, in essence, their identities are virtually merged into one, to the extent of the policy limits." *Id.* at 1067.

No. 13-30154

Here, the relationship between the SLS, the mortgage servicer , and Series 2010B, the note holder, is not necessarily identical to the identity of interest that existed between the title insurer and the insured in *United General Title Insurance*, at least not without more development of the "factual and legal issues presented in the respective actions." *Id.*[7] In any event, on the sparse record on appeal from the district court's grant of SLS's motion to dismiss, it is impossible to say that SLS and Series 2010B shared an identity of interest sufficient for res judicata to attach.

Since the district court's decision regarding the application of res judicata as applied to Arch Bay and SLS—who were not parties to the first judgment—turns on fact-bound questions, such as control and virtual representation, the district court's decision to grant Defendants' motion to dismiss before any discovery took place was erroneous. Therefore, we reverse the district court on this ground and remand for further proceedings.

**C.    Whether the District Court Erred in Holding that Delaware Corporate Law Applied and that Series 2010B Constituted a Separate Juridical Entity**

Alphonse contends the district court erred when it held Arch Bay was the wrong party to sue because Arch Bay's wholly owned subsidiary, Series 2010B, is the separate entity that actually held the note. Alphonse argues that because he alleges in his complaint that Arch Bay and Series 2010B are not legally distinct entities, the district court erred by holding a Series LLC is a separate entity without evidence.

The district court held that, "[t]aking all of plaintiff's factual claims as true, [Series 2010B] is a separate entity from [Arch Bay" and dismissed Alphonse's

---

[7] For example, if foreclosure is delayed, a mortgage servicer arguably accrues more fees by servicing the mortgage for a longer time period; whereas, the mortgage note holder may be harmed by delay and transaction costs in obtaining a foreclosure judgment. Thus, their interests may not necessarily be identical.

10

No. 13-30154

LUTPA claims against Arch Bay Holdings LLC.  The district court reasoned that Alphonse's allegation that "AB-Series 2010B is a financial instrument and not a separate juridical entity" is a "legal conclusion that is couched as a factual allegation." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The district court cited the Delaware Corporate Code which provides in pertinent part:

> A limited liability company agreement may establish or provide for the establishment of 1 or more designated series of members, managers, limited liability company interests or assets.  Any such series may have separate rights, powers or duties with respect to specified property or obligations of the limited liability company or profits and losses associated with specified property or obligations, and any such series may have a separate business purpose or investment objective.
> . . . .
> . . . .  Unless otherwise provided in a limited liability company agreement, a series established in accordance with subsection (b) of this section shall have the power and capacity to, in its own name, contract, hold title to assets (including real, personal and intangible property), grant liens and security interests, and sue and be sued.

Del. Code Ann. tit. 6, § 18-215 (2012) (emphasis added).  The district court reasoned from these provisions that "AB-Series 2010B is a separate juridical entity from Arch Bay Holdings, LLC itself, [and is therefore] responsible for the trade practices at issue in the complaint."

Alphonse calls the district court's conclusion here the first of its kind and argues that Arch Bay did not produce sufficient evidence to show Series 2010B was a separate legal entity and thus failed to meet its burden on its motion to dismiss.  Louisiana's applicable statute[8] provides: "The laws of the state or other jurisdiction under which a foreign limited liability company is organized shall govern its organization, its internal affairs, and the liability of its managers and

---

[8] Louisiana conflict-of-law rules apply to this appeal of a Louisiana federal district court judgment.  *See Truong*, 717 F.3d at 381 (citation omitted).

members that arise solely out of their positions as managers and members." La. Rev. Stat. Ann. § 12:1342.

The district court's conclusion that Delaware law applies does not necessarily follow because the district court has not yet considered the possibility that liability to a third party like Alphonse constitutes external rather than internal affairs. The district court concluded Delaware law applies by interpreting the Louisiana conflict-of-law statute that provides "the laws of the state . . . under which a foreign limited liability company is organized shall govern its organization[] [and] its *internal affairs*." (emphasis added) (quoting La. Rev. Stat. Ann. § 12:1342). However, it is not clear that the liability of a limited liability company, or its "series," to third parties like Alphonse is *internal* rather than *external*. After all, "the law of the state of incorporation normally determines issues relating to the *internal* affairs of a corporation," but "[d]ifferent conflicts principles apply . . . where the rights of third parties *external* to the corporation are at issue." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) (citation omitted). And as at least one district court, interpreting California's conflict-of-law statute as applied to LLCs, has concluded that the internal-affairs doctrine "does not apply to disputes that include people or entities that are not part of the LLC." *Butler v. Adoption Media, LLC*, No. C04-0135 PJH, 2005 WL 2077484, at *1, 3 (N.D. Cal. Aug. 26, 2005) (declining to apply Arizona law to a dispute between an external party and an Arizona LLC).

The district court does not appear to have considered the issue of whether liability as between a third-party plaintiff with respect to a holding company LLC or its Series LLC constitutes internal or external affairs. *See also* Restatement (Second) of Conflict of Laws § 302 cmt. a (1971), *cited with approval in First Nat'l City Bank*, 462 U.S. at 621 ("[T]he 'internal affairs' of a corporation [involve] the relations inter se of the corporation, its shareholders, directors, officers or agents . . . ."). In light of the fact that the district court failed to consider the

external–internal affairs conflict-of-law question under Louisiana law, dismissal under Federal Rule of Civil Procedure 12 without leave to amend was error. We remand for the district court to consider this question, perhaps with the benefit of factual development. *Cf. Butler*, 2005 WL 2077484, at \*3 ("The question whether [defendants, LLCs,] are bound by California law is the ultimate issue in this case. . . . [I]t is a question . . . for . . . summary judgment, once discovery has closed and all the facts are known. Accordingly, the court is unwilling to rule on this question in the context of the present motion."); Restatement (Second) of Conflict of Laws, at Ch. 13, Topic 5 "Introductory Note" (1971) ("Whether a suit involving the internal affairs of a foreign corporation should be entertained or dismissed is a question which depends largely upon the facts of the case and the discretion of the trial court.").

## III. CONCLUSION

For the reasons above, we REVERSE and REMAND for further consideration consistent with this opinion.