ROSEMARY LEDET,-Judge.
|, This is a suit for breach of contract and violation of two federal statutes — the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the “FCRA”), and the Fair Debt Collection Practice Act, 15 U.S.C. § 1692, et seq. (the “FDCPA”) (the “CDC Suit”). The CDC Suit was commenced by Sonya Parker, a pro-se plaintiff, against Tulane-Loyola Federal Credit Union (the “Credit Union”). In response, the Credit Union filed a declinatory .exception of lis pendens. In support of its exception, the Credit Union contended that the CDC Suit involved the same loan repayment matters that were at issue in its pending collections suit against Ms. Parker (the “Collections Suit”).[1] Following a hearing, the trial court sustained the lis pendens exception and dismissed the CDC Suit without prejudice to Ms. Parker’s claims' and defenses in Case No. 13-50821 pending in First City Court for Orleans | ¡.Parish — the Collections Suit. From this judgment, Ms. Parker appeals. For the reasons that follow, we affirm.
. FACTUAL AND PROCEDURAL BACKGROUND
On July 24, 2015, Ms. -Parker commenced the- CDC Suit, which was captioned “Suit for Breach- of Contract and Violation of Fair Credit. Reporting Act (FCRA),” against the Credit Union. In her-petition, she averred that on July 20, 2011, she took out a secured consumer loan in the amount of $1,000.00 from the Credit Union as “a means to establish and *443 rebuild credit.”[2] She further averred that the Credit Union collected and received payments from her, but she received no money from the Credit Union, which she claimed was a breach of contract. Ms. Parker still further averred that the Credit Union reported on her consumer credit report that it received a payment of $982.00 on March 13, 2012, along with previous payment from her, yet it reported an unpaid and delinquent balance. She contended that this was inaccurate reporting and a violation of the FCRA.
Continuing, Ms. Parker averred in her petition that “[w]hen an investigation was requested Defendant [the Credit Union] cancelled the debit/credit card associated with Plaintiffs [Ms. Parker’s] checking and savings account, limited the usage and viewing of Plaintiffs account, and brought a suit against Plaintiff’ — the Collections Suit. She alleged that in the Collections Suit the Credit Union | .¡requested Ms. Parker pay $25,000.00[3] for a loan in the amount of $435.43, as well as costs of attorneys’ fees and court fees. She further alleged that judgment for the Collections Suit was denied,[4] yet the Credit Union still reported and reflected an alleged unpaid balance. The incorrect and inaccurate information the Credit Union reported to the credit bureaus, she alleged, violated the FCRA and the FDCPA. The relief Ms. Parker prayed for in the CDC Suit included, among other things, compensation for the two loans in the amounts of $1,000.00 and $435.43 that she avers were collected on, yet never received.
On August 7, 2015, the Credit Union filed a timely declinatory exception of lis pendens pursuant to La. C.C.P. arts. 531 and 925. In support, as noted at the outset, the Credit Union contended that Ms. Parker’s suit (the CDC Suit) involved the same loan repayment matters that wére at issue in its pending Collections Suit. Thereafter, the Credit Union, with leave of court, supplemented its memorandum in support of its lis pendens exception to add that oh August 11, 2015, Ms. Parker filed a “Reconventional Demand/Counter-Claim” in the Collections Suit (the “Reconventional Demand”). In the Reconventional Demand, the Credit Union contended that Ms. Parker asserted the' same allegations that shé asserted in her petition in the CDC Suit.- Particularly, just as in the CDC Suit, Ms. Parker made | ¿allegations in the Reconventional Demand of inaccurate credit reporting and improper collection efforts regarding the same loans or account.
On September 18, 2015, a hearing was held on the lis pendens exception. In its colloquy at the hearing with Ms, Parker, the trial court rejected Ms. Parker’s attempts to distinguish her, claims in the CDC Suit from those in the Reconventional Demand in the. Collections Suit. The following colloquy occurred:
*444 THE COURT: Does it all flow from the original account?
MS. PARKER: No, it doesn’t.
THE COURT: How is that possible?
MS. PARKER: Because the suit that the defendant filed, the Tulane-Loyola ..Federal Credit Union in 2013 Item Number 50821, they indicated in Orleans Parish that a default had taken place and a balance was unpaid while I was a resident of Shreveport and the defendant, the banking institution, was collecting payments from me while also reporting the payment to—
THE COURT: Right.- That was in 2011.
MS. PARKER: That is 2013.
THE COURT: Okay.
MS. PARKER: The account that they were also falsely reporting to the credit bureau agency is on an account for a separate loan. So it is two misconducts and it is two acts of fraud because that is what the whole matter is. Misconduct took place and fraud took place.
Although the Credit Union’s attorney acknowledged that there were two loans in the facts of this case, its attorney explained that the first one was a credit builder loan, which was not collected on. The Credit Union’s attorney further explained that after Ms. Parker defaulted on the credit builder loan, she overdrew her checking account at the Credit Union. To avoid the Credit Union closing the account, she agreed to pay back the default, which gave rise to the $435.43 loan.
liA-t this point in the hearing, the trial court, in an attempt to explain to Ms. Parker its finding that the requirements for lis pendens were satisfied, stated to her: “you are fine in City Court. I think this case is the same case as you have in City Court in [R]econventional [D]emand, and you can try that downstairs.” The trial court further explained that Ms. Parker’s rights were preserved in her Recon-ventional Demand in the Collections Suit. Continuing, the trial court explained that Louisiana has a system of fact pleading, that Ms. Parker could amend her Recon-ventional Demand to assert other claims, and that all of her claims needed to be tried in one case.
In its judgment dated October 22, 2015, the trial court ordered that “the Declinato-ry Exception of Lis Pendens is GRANTED and all claims by plaintiff, Sonya Parker are DISMISSED without prejudice to Ms. Parker’s claims and defenses in Case No. 13-50821 pending in First City Court for Orleans Parish.”[5] This appeal followed.
STANDARD OF REVIEW
Because it is a question of law, a trial court’s ruling on an exception of lis pendens is reviewed de novo. Glass v. Alton Ochsner Med. Found., 02-0412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, 405; Krecek v. Dick, 13-0804, pp. 3-4 (La. App. 4 Cir. 2/19/14), 136 So.3d 261, 264. Stated otherwise, “the standard of review of the appellate court in reviewing a question of law is whether the court’s interpretive decision is legally correct.” First Bank & Trust v. Simmons, 14-1210, Rp. 24 (La.App. 4 Cir. 4/22/15), 165 So.3d 1025, 1040. “If the decision of the district court is based upon an erroneous application of the law rather than on a valid exercise of *445 discretion, then the decision is not due deference by the reviewing court.” Kre-cek, 13-0804 at pp. 3-4, 136 So.3d at 264.
DISCUSSION
The sole issue presented in this case is whether the trial court- erred in granting the Credit Union’s lis pendens exception. The governing code article is La, C.C.P. art. 531,[6] which provides as follows:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendéred shall be conclusive of all.
As the Louisiana Supreme Court has noted “[t]he ‘test’ established to determine if an exception of lis pendens should be sustained is the same as that for res judicata; thus, an exception of lis pendens should be sustained if ‘a final judgment in the first suit would be res judicata in the subsequently filed suit.’ ” Aisola v. Louisiana Citizens Prop. Ins. Corp., 14-1708, p. 4 (La.10/14/15), 180 So.3d 266, 269 (quoting United Gen. Title Ins. Co. v. Casey Title, Ltd., 01-600, p. 8 (La.App. 5 Cir. 10/30/01), 800 So.2d 1061, 1065, and citing Domingue v. ABC Corp., 96-1224 (La.App. 4 Cir.. 6/26/96), 682 So.2d 246, 248). The | .¿jurisprudence has identified the following three requirements for lis pendens to apply:
1. Two or more suits pending.
2. The suits involve the same transaction or occurrence, which can be determined on a casé-by-case basis.
3. The suits involve the same parties in the same capacities, and “[t]he ‘identity of parties’ prerequisite for res judicata does not mean that the parties must be the same physical or material parties, so long as they appear in the same quality or capacity.”
First Bank & Trust, 14-1210 at pp. 25-26, 165 So.3d at 1041 (internal footnotes omitted). The first and third elements are not disputed. It is undisputed that there are two or more suits pending — the Collections Suit and the CDC Suit.[7] It is also undisputed that the suits are between the same parties in their same capacities. Although the roles of the parties in the litigation— plaintiff versus defendant — are reversed, they are in the same capacities in both cases — lender and borrower. The second element, however, requires further analysis.
No one test exists for determining what constitutes the same “transaction or occurrence.” See Travcal Properties, LLC v. Logan, 10-323, p. 5 (La.App. 3 Cir. 10/6/10); 49 So.3d 466, 470. What constitutes a transaction or occurrence must be *446 determined on a case-by-case basis. Kre-cek, -13-0804 at p. 4, 136 So.3d at 264. Addressing the meaning of the phrase “transaction or occurrence,” the court in Hy-Octane Investments, Ltd v. G & B Oil Products, Inc., 97-28, p; 6 (La.App. 3 Cir. 10/29/97), 702 So.2d 1057,1060, pointed out that seven oí the Louisiana Code of Civil Procedure articles use the "phrase — La. C.C.P. arts. 425, 531, 532, 891, 1061, 1071, and 4845. The court further pointed out that La. C.C.P. art, 1153 uses the slightly different phrase “conduct, transaction, or occurrence.” Id. Although none of the articleá define the phrase; the court noted that the articles “equate the term with ‘the subject matter of the litigation’ (Articles 425 <& 891), ‘the subject matter of the principal action’ or ‘principal demand’ (Article 1061 & 4845), and ‘the subject matter either of the original action or a reconven-tional demand or relating to any property that is the subject matter of the original action’ (Article 1071).” Hy-Octane Investments, 97-28 at p. 6, 702 So.2d at 1060.
Continuing, the court in Hy-Octane Investments summarized the treatment .of the phrase by the federal courts as follows:
The federal courts have given the words “transaction or occurrence” a broad and liberal interpretation in order to avoid a.multiplicity of suits. All logically related events entitling a person to institute legal action against another generally are regarded as comprising a “transaction or occurrence.” Lasa Per L’Industria Del Marmo Soc. Per Azioni v. Alexander, 414 F.2d 143 (6th Cir.1969).
Also, the federal courts have discussed the very issue before us in connection with Fed.Rule Civ.P. 13(a). Rule 13(a) concerns a compulsory counterclaim that must be- asserted “if it arises out of the same transaction or occurrence that is the subject matter of the opposing party’s claim_” When an article of the Louisiana Code of Civil Procedure is based, on a federal rule, decisions of the federal courts can be used for guidance. Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986).
97-28 at pp. 6-7, 702 So.2d at 1060.
For res judicata purposes, Louisiana courts, in determining whether the “transaction or occurrence” element is satisfied, have borrowed the “transaction or occurrence” test employed by federal courts in determining whether a counterclaim is compulsory under Fed.Rule Civ.P. 13(a).[8] See Zen-Noh Grain Corp. v. Thompson, 13-110, p. 5 (La.App. 5 Cir. 8/27/13), 123 So.3d 777, 779 (citing Durkin v. Quest, Inc., 98-939 (La.App. 5 Cir. 12/29/98), 724 So.2d 868, citing Park Club, Inc. v. Resolution Trust Corp., 967 F.2d 1053 (5th Cir. 1992)). In that context, the following four different “transaction or occurrence” tests have been suggested:
(1) Are the legal and factual issues raised by the claim and counterclaim largely the same?
(2) Would res judicata bar a later suit on the counterclaim in the absence of the compulsory-counterclaim rule?
(3) Will substantially the same evidence support or refute both the plaintiffs claim and the counterclaim?
(4) Are the claim and counterclaim logically related?
Bryan Garner, BLACK’S LAW DICTIONARY, 1535 (9th ed.2009),
In this case, the relevant comparison is between the allegations in Ms. Parker’s Reconventional Demand and' in her petition in the CDC. Suit. Ms. Parker *447 alleges in her petition in the CDC Suit that “[t]he incorrect and inaccurate information reported to the credit bureaus by the Defendant is a violation of the Fair Credit Reporting Act, as well as the Fair Debt Collection Practice Act.” She expressly references in her petition in the CDC Suit not only the- $1,000.00 credit- rebuilder loan; but also the $435.43 loan that was the subject of the Collections Suit.
Ms. Parker alleges in’ her Recóñventional Demand in the Collections Suit that the Credit Union “committed fraud by collecting payments on accounts, reporting to the credit bureau agencies that collection was done, but reporting in court that finances were not received.” Ms. Parker further alleges in her Reconventional Demand that the Credit Union “has been under investigation for 11nthe same account Plaintiff [the Credit Union] filed suit against Defendant [Ms. Parker.]” Ms. Parker still ■ further alleged in her Reconventional Demand that the Credit Union committed “consumer fraud.”
A comparison of the allegations in Ms. Parker’s Reconventional Demand in the Collections Suit with the allegations in her petition in her CDC Suit establishes that in both pleadings she alleges that same transaction or occurrence — the reporting of inaccurate information pertain-mg to Ms. Parker’s account to consumer credit bureaus.[9] The outcome in this case may have been different but for Ms. Parker’s filing the. Reconvention Demand in the Collections Suit.- The federal courts have held that a FDCA counterclaim claim is “permissive, npt. compulsory” in a pending state court suit to collect tlie underlying debt. See Peterson v. United Accounts, Inc., 638 F.2d 1134, 1137 (8th Cir. 1981). In this case, however, the issue of whether Ms. Parker was required to assert a counterclaim - in the Collections Suit based on inaccurate credit reporting is not presented. At the time of the trial court’s ruling on the exception,[10] Ms. Parker, as the Credit Union established, had filed a Reconventional Demand alleging essentially the same facts on which she bases her CDC Suit — the Credit Union’s alleged inaccurate reporting regarding her account to credit reporting bureaus. Although in her Reconvention Demand Ms. Parker fails to plead the federal statutory provisions she pled in her |nCDC Suit, we find, as did the trial court, that the solution is for her to amend her Reconventional Demand to add such claims. As the trial court pointed out, Louisiana is a fact pleading state. See La. C.C.P. art. 854.[11]
In sum, we-find no error in the trial court’s finding that Ms. Parker’s claims in *448 the Reconventional Demand and in the petition in the CDC Suit are based on the same transaction or occurrence, satisfying the second lis pendens element. Given all three lis pendens elements are present, we find no error in the trial court’s judgment granting the Credit Union’s declinatory exception of lis pendens.

DECREE

For the forgoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

. On March 19, '2013, the Credit Union commenced the Collections Suit, which was captioned a "Suit on Promissory Note,” against M.s. Parker. In that suit, the Credit Unipn averred that it was the holder of a $435,43 promissory nóte and that Ms. Parker- had failed to pay the installments due on the-note, making the entire principal sum due. The Credit Union thus prayed that Ms. Parker be cast in judgment for the principal sum of ' $435.43; unpaid finance charges of $63.47; ■18% interest on the unpaid from.February.16, 2013 until paid in full; .reasonable attorneys.’ fees in the judicially approved amount of 25%; and court costs.

.The loan was a so-called “credit rebuilder loan.” The record includes the following definition of the Credit Union’s “credit rebuilder policy or program”:
Loan amount of $1,000 is made, deposited into share savings account and frozen until loan amount is paid in full. If payments are not made according to the terms, the deposited funds transfer to pay off the loan. This allows credit to build over time, generally 12 to 18 months.

. Although the Collections Suit includes a request for 25% attorneys’ fees, it does not include a request for $25,000.00.

. Contrary to Ms. Parker’s contention, the Credit Union was not denied judgment in the Collections Suit. Rather, the Credit Union’s motion for default judgment in the Collections Suit was denied on the basis that Ms. Parker had filed an answer to that suit. Hence, the Collections Suit was not dismissed.

. Although Ms. Parker assigns as error the trial court’s granting of the Motion to Quash Subpoenas Duces Tecum, the record reflects that the trial court did not grant this motion. To the contrary, the trial court, in is October 22, 2015 judgment, "DISMISSED as moot” the Credit Union’s Motion to Quash Subpoenas Duces Tecum. Accordingly, we find this issue is not before us.

. In 1990, the Louisiana Legislature amended La. C.C.P. art. 531 to effectuate the changes it made to the res judicata articles, La. R.S. 13:4231-32. See Comment — 1990, La. C.C.P. art. 531. "The purpose of the charige in the doctrine of res judicata was to require the plaintiff 'to seek all relief and tq assert all rights which arise out of the same transaction or occurrence.' Comment (a) to La.R.S. 13:4231. This serves the purpose of judicial economy and fairness. The focus is on the transaction or occurrence as opposed to a cause of action. See Comment (a) to-La.R.S. 13:4231.” Hy-Octane Investments, Ltd. v. G & B Oil Products, Inc., 97-28, pp. 4-5 (La.App. (3 Cir. 10/29/97), 702 So.2d 1057, 1060.

. Although the Credit Union pointed out that Ms. Parker filed another suit in another division of Civil District Court, there is no evidence in the record of this case regarding that third suit other than references to it. .

. Under Fed.Rule Civ.P. 13(a), a compulsory counterclaim is one that “arises out of the transaction or occurrence which is the subject matter of the opposing party's claim.”-

. See In re Miller, 335 B.R. 335, 350 (Bankr. E.D.Pa.2005) (noting that ‘"[t]he Debtor’s claims against both the credit reporting agencies and the claim holders arise out of the same series of transactions or occurrences— here the furnishing and reporting of obsolete information — which constitutes a violation of the FCRA.").

. “ ‘Because lis pendens does - not address the merits of the disputes between the parties, a reviewing court considers lis pendens in the procedural and factual climate that exists at the time of review, rather than at the time of the trial court judgment.’" Trahan v. 2010 Beglis, L.L.C.,, 11-365, p. 4 (La.App. 3 Cir. 12/14/11), 81 So.3d 192, 195 (quoting Brooks Well Servicing, Inc. v. Cudd Pressure Control, Inc.; 34,796, p. 2 (La.App. 2 Cir. 8/22/01), 796 So.2d 66, 68). Extending that principle, a trial court likewise is entitled to consider the procedural and factual climate that exists at the time of its review of the exception.

.La. C.C.P. art. 854 provides as follows:
No technical forms of pleading are required.
All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered ' paragraphs. As far as practicable, the contents of' each paragraph shall be limited to a single set of circumstances.